KC **FILED**

MAY 3 0 2007  $5-30-07$

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Dr. JAMES ELIPAS, JOHN PAVLOPOULOS, THOMAS
PAVLOPOULOS, DENNIS PAVLOPOULOS, IVO
COZZINI,

        Plaintiffs,

        v.

JAMES K. JEDYNAK; B. GAIL HOWARD;
UNIFIED WORLDWIDE TRANSPORT, LLC; KKJ
HOLDINGS, LLC; KKJ HOLDINGS II, Inc.; KKJ
HOLDINGS III, LLC; KKJ HOLDINGS IV, LLC; ASSET
PROTECTION, INC.; UNLIMITED OPTIONS, INC.,
PROSPEROUS ENDEAVORS LIMITED PARTNERSHIP,
PACIFIC COAST HOLDING GROUP, L.L.C., GREG
KITTER; and WENDY JEDYNAK,

        Defendants.

**07CV3026**
**JUDGE MORAN**
**MAGISTRATE JUDGE NOLAN**

§
§
§
§
§
§
§
§

**COMPLAINT**

**JURY DEMANDED**

## COMPLAINT FOR SECURITIES FRAUD

    Plaintiffs, Dr. James Elipas, John Pavlopoulos, Thomas Pavlopoulos, Dennis
Pavlopoulos, and Ivo Cozzini, by and through their attorneys, Michael R. Collins and
John P. Collins of the firm of COLLINS & COLLINS, for their Complaint against the
defendants named above allege as follows:

### SUMMARY

    1.    This case arises out of a fraudulent investment scheme whereby James J.
Jedynak ("Jedynak"), B. Gail Howard ("Howard") and Gregg Kitter ("Kitter"), through
misrepresentations of, *inter alia,* the earnings, business, capability, contracts and
prospects of Unified Worldwide Transport, LLC ("UWT"), a purported voice over
internet telecommunications company, induced the plaintiffs and various other investors
to purchase membership interests in UWT for over $20,000,000. Thereafter, the

defendants issued false financial statements and false reports of UWT's earnings, financial position and operations to conceal their diversion of the bulk of the investors' money to themselves for their own personal.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this action pursuant to Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] and the principals of pendent and ancillary jurisdiction.

3.     Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts or transactions constituting the violations occurred in this District.

## PLAINTIFFS

4.     Dr. James Elipas ("Elipas") is a podiatrist residing in the Northern District of Illinois who purchase membership interests in UWT for $1,350,000.

5.     John Pavlopoulos, Thomas Pavlopoulos and Dennis Pavlopoulos (collectively "Pavlopoulos") are individuals residing in the Northern District of Illinois who purchased membership interests in UWT in the respective amounts of $325,000, $175,000 and $50,000.

6.     Ivo Cozzini is an individual residing in the Northern District of Illinois who purchased membership interests in UWT in the amount of $200,000.

7.     Augustino M. Fontenetta is an individual residing in the Northern District of Illinois who purchased membership interests in UWT for $50,000.

## DEFENDANTS

8.     James Jedynak ("Jedynak") resides in the Northern District of Illinois and sold membership interests in UWT directly to the plaintiffs in Illinois. Jedynak over a period of time became a trusted adviser of Elipas who paid him an annual fee of $5,000 to act as his financial and investment advisor. Jedynak's title with UWT is unclear since at first when he sold UWT's securities to the Pavlopouloses, he represented that he was a

securities broker and that he had no position with UWT but later, when UWT business disappeared in 2007, he represented that he was a consultant of UWT all along. Jedynak is the husband of the defendant Wendy Jedynak and the brother-in-law of the defendant Greg Kitter. Jedynak is the managing member of KKJ Holdings, LLC ("KKJ-I"), the president of the defendant, KKJ Holdings II, Inc. ("KKJ-II"), the manager of KKJ Holdings, III, L.L.C. ("KKJ-III"), the manager of KKJ Holdings, IV, L.L.C. ("KKJ-IV"), the president of Asset Protection, Inc. ("Asset Protection"), the managing member of Pacific Coast Holdings Group, L.L.C. ("PCHG") and the secretary/treasurer of Unlimited Options, Inc. ("Unlimited Options")  These entities appear to have been formed by Jedynak to obtain, transfer and conceal the funds that he received from the plaintiffs and other UWT investors by misrepresenting to the investors that KKJ would forward the money to UWT. The forgoing entities with the exception of UWT are collectively referred to as the "Jedynak Entities."

9.     B. Gail Howard ("Howard") resides in California. She was the president of UWT and she represented that she was a 19 year telecom veteran with a most distinguished background and reputation. She represented that in forming UWT she was replicating her prior successful international telecom model at NorthStar which she, as CEO and President, sold in 2001. She represented that with only $3,000,000 in capital she sold NorthStar for tens of millions of dollars. Howard traveled to Illinois to meet the plaintiffs and other investors to promote and sell membership interests in UWT. Howard, together with Jedynak and Kitter made statements to, and provided documents to the plaintiffs showing that UWT was hugely profitable, had valuable customers and that it was meeting all of its financial projections for tremendous growth in revenue and profit margins.

10.     Gregg Kitter ("Kitter") is the brother-in-law of Jedynak and the brother of Wendy Jedynak. Kitter represented to the plaintiffs that he was a Certified Public Accountant. Kitter was or became the Chief Financial Officer of UWT and the plaintiffs are informed and believe that Kitter was involved in the preparation of false projections, phony financial statements, and in assisting Jedynak and Howard in concealing the fact that UWT's operations were a tiny fraction of the international telecommunications company that the plaintiffs and other investors were lead to believe.

3

11.    Wendy Jedynak is the wife of Jedynak. Wendy Jedynak is the owner and principal officer of nearly all the Jedynak Entities. She is the managing member of KKJ-I; secretary of KKJ-II; managing member of KKJ- III; managing member of KKJ-IV; secretary, and on information and belief, a shareholder of Asset Protection; the president of Unlimited Options; and the general partner of Prosperous Endeavors Limited Partnership. Jedynak transferred assets to Wendy Jedynak and to the Jedynak Entities which Wendy Jedynak owned in an effort to put them out of the reach of his creditors that would inevitably arise from Jedynak's fraudulent activities described below. One significant transfer is Jedynak's transfer of his interest in the real estate located at 2222 Bracken Lane, Northfield, Illinois on May 5, 2006, a time when the defendants' fraudulent activities were beginning to unravel.

12.    Unified Worldwide Transport, LLC ("UWT") is a California limited liability company whose membership interest were sold to the plaintiffs and other investors by Howard and Jedynak.

13.    The Jedynak Entities: KKJ- 1 was formed on 7/30/03 in Nevada with reportedly no capital. KKJ-II was formed on 3/24/04 in Nevada with a reported capital of $1,000 and dissolved on 2/2/06. KKJ-III was formed on 3/24/04 in Nevada with reported capital of $-0- and was in a default status as of 4/1/07. KKJ-IV was formed on 2/17/05 in Nevada with reported capital of $-0- and was in a default status as of 3/1/07. Asset Protection is and Illinois corporation formed in 1995 and is in good standing. PCHG was formed in Nevada on 8/5/04 with a reported capital of $-0- and was active as of 4/16/06. Unlimited Options was formed in Nevada on 10/23/00 with a reported capital of $1,000 and was revoked on 11/1/04. Prosperous Endeavors was formed on 11/9/2000 in Nevada with a reported capital of $-0- and was in default as of 12/1/06. Jedynak took proceeds from his fraudulent membership sales in UWT and transferred them to various Jedynak Entities.

## Rule 9(b) Fraud Allegations:

## Representations Regarding Dr. Elipas' Initial Investment

4

14.     In or about November 2003, Jedynak, as trusted financial advisor of Dr. Elipas, represented to him that he had a cash flow investment opportunity (UWT) that was beginning to explode with growth and earnings in the telecommunications business. He represented to Dr. Elipas that he would have mentioned UWT sooner, but he wanted to wait until the company was profitable and that its prospects were secure before he advised Dr. Elipas to invest.

15.     Jedynak and Howard represented to Dr. Elipas that UWT was particularly well positioned to be a major player in the growing Voice over Internet Protocol ("VoIP") paradigm to which carriers worldwide were switching; that UWT had aggregated a staff with relationships and expertise to rival long-time major competitors; and that UWT was offering Tier 1, Tier 2 and Tier 3 carriers services to over 100 countries over a state-of-the-art global VoIP network that had boosted traffic from 0 to 4 million minutes in 3 months.

16.     Jedynak and Howard further represented to Dr. Elipas that UWT owned $1 million in infrastructure and that it had routes and business developments in place in Columbia, Mexico, Philippines, Taiwan, China, Honduras, UK and other countries around the globe.

17.     Jedynak and Howard represented to Dr. Elipas that just based upon contracts in place and without anything new coming in, by the end of March 2004 UWT would have distributable monthly cash flow in excess of $30,000 per month, per 1 unit of UWT. Jedynak and Howard further represented to Dr. Elipas that based upon what UWT had in the pipeline, UWT would be throwing off a distributable cash flow in excess of $60,000 per month by the end of the 2nd Quarter of '04 and by year end of '04, UWT should be at or near $75,000 per unit per month. Jedynak and Howard represented that these numbers did not include the "Major Carrier" that UWT had in the pipeline for 200,000,000 minutes per month.

18.     Jedynak and Howard represented to Dr. Elipas that UWT would be sold in mid 2005 to a Tier One Carrier and that Dr. Elipas would receive nearly 10 times his original investment at the time of sale.

19.     Jedynak presented Dr. Elipas with profit and loss statements and projected profit and loss statements for UWT that showed its profits going from a monthly loss in

5

June –September 2003 of about $60,000 per month to a monthly profit of $180,000 in November 2003. Thereafter, the projections showed monthly profits growing steadily to over $1.3 million per month as of December 2004.

20.     Shortly thereafter, Jedynak provided Dr. Elipas with revised profits and loss statements and projections. The revised projections showed UWT's profits growing from $240,000 for the month of November 2003, to $945,398 for the month of January 2004 and thereafter moving sharply upward so that by December 2004 monthly income was projected at $9,189,838 per month.

21.     Jedynak and Howard represented to Dr. Elipas that "1 unit" of UWT was valued at $750,000 and that 1 unit represented a 1% interest in UWT. Dr. Elipas did not have the money to invest at UWT at the time so Jedynak advised him to refinance his home and to use the equity in his home to invest in UWT.

22.     Jedynak represented to Dr. Elipas that he personally had invested $795,000 in UWT.

23.     Dr. Elipas, in reliance on the forgoing representations, in or about January 2004 purchased what Jedynak and Howard represented to be to be a 1% membership interest in UWT for $750,000.

### Representations Regarding Pavlopouloses' Initial Investment

24.     Jedynak was an acquaintance of the defendant, Thomas Pavlopoulos. In late 2003 Jedynak approached Thomas Pavlopoulos, Tom's father, John Pavlopoulos, and Tom's brother, Dennis Pavlopoulos, with what Jedynak represented as a cash flow investment opportunity that was about to explode with growth and earnings in the telecommunications business. Jedynak presented his business card showing the he was a registered representative of InterSecurities, Inc/Member NASD/SIPC. Unbeknown to the Pavlopouloses at the time, Jedynak was not a registered representative of InterSecurities, Inc. since his registration had expired in March 2003.

25.     Jedynak thereafter met with the Pavlopouloses and proceeded to tell them about UWT which he, together with Howard, represented to be a state-of-the art Internet Protocol (VoIP) network with a fiber optic packet-switched network. Said defendants further represented that UWT had a larger, more efficient traffic volume that dramatically

6

reduced UWT's cost per call relative to its competition. Defendants further represented that UWT operated on a cash-based business where its customers pre-pay every three to fifteen days.

26.     Jedynak provided the Pavlopouloses with profit and loss statements and financial projections of UWT. Jedynak and Howard represented that UWT was valued at $75,000,000 and that 1% ownership interests were being sold for $750,000 in increments of 50,000 units. Jedynak further stated that he could make special arrangements to sell blocks of less than 50,000 units. Jedynak represented that UWT's $75,000,000 valuation was based upon the contracts and business that UWT had in place.

27.     Jedynak presented the Pavlopouloses with projected profit and loss statements for UWT that showed its profits going from a monthly loss in June – September 2003 of about $60,000 per month to a monthly profit of $180,000 in November 2003 and monthly profits growing steadily thereafter to over $1.3 million per month as of December 2004.

28.     Shortly thereafter, Jedynak provided the Pavlopouloses with revised profit and loss statements and financial projections. The revised projections showed UWT's profits growing from $240,000 for the month of November 2003, to $945,398 for the month of January 2004 and thereafter moving sharply upward so that by December 2004 monthly income was projected at $9,189,838 per month.

29.     Jedynak further represented to the Pavlopouloses that their investment in UWT would only be outstanding for 12 months because UWT would be sold within 12 for $600,000,000 to $750,000,000 and the plaintiff would receive their investment back plus the profits on their investment at the time of sale.

30.     Jedynak represented that he personally had invested several million dollars in UWT.

31.     In reliance on the defendants' representations set forth above the Pavlopouloses made a $250,000 investment in UWT for a membership of 16,667 units on or about January 31, 2004.

**Representations Leading to Tom Pavlopoulos' Subsequent Investment:**

7

32.    On April 12, 2004 Howard wrote to the Dr. Elipas and the Pavlopouloses representing that she was, "…happy to report that UWT LLC is meeting its projections and is positioned for rapid growth." Howard thereafter represented that UWT had an elaborate international telecommunications network and described the network in some detail. Howard further represented that UWT had moved from a start-up company to a "take-off" company and that it had assembled all the necessary elements to compete with the "big leaguers" in the industry. Howard further represented that audited financial statements would be sent by the end of the second quarter of 2004.

33.    In reliance on the forgoing representations in or about August 13, 2004 Jedynak and Howard arranged a sale of UWT units to Thomas Pavlopoulos whereby an entity by the name of KOR Venture, LLC sold Tom Pavlopoulos 6060.605 units of UWT for $100,000. Jedynak represented that KOR wanted to sell because its owner was being sued for tax evasion and he needed the money to pay his fines. Jedynak represented that the cost of the 6060.605 KOR units was $100,000 because a 1% interest in UWT (50,000 units) was now valued at $825,000 instead of $750,000 which was the price of the units at the time of the Pavlopouloses' first purchase. Jedynak represented that the value of UWT had increased from $75,000,000 in January 2004 to $82,500,000 in August 2004.

34.    In connection with the KOR sale, Wendy Jedynak on behalf of KKJ-I, Howard for UWT and Tom Pavlopoulos signed an Agreement Regarding Unit Payments. In the agreement KKJ-I described itself as a "placement agent" and KKJ-I was to receive 10% of whatever distributions that Thomas Pavlopoulos received on his units after the return of his initial investment. Jedynak described that he did not get any money or commissions for his sales of UWT stock to the plaintiffs or other investors and that all of his compensation would be paid on the "back-end" when the company was sold in excess of $1 billion.

### Representations Regarding Dr. Elipas' Subsequent Investment

35.    During 2004 Howard and Jedynak provided Dr. Elipas with spreadsheets showing the earnings of UWT for each month of 2004. The spreadsheets showed that UWT was growing rapidly and the earnings of UWT were growing to hundreds of thousands of dollars per month. Dr. Elipas and his wife specifically asked Jedynak if

8

these earnings represented audited numbers. Jedynak assured Dr. Elipas that the earnings and the financial statements of UWT for 2003 and 2004 had been audited and reviewed by a reputable accounting firm by the name of Kellogg and Andelson and that the numbers were genuine.

36.    Jedynak and Howard represented to Dr. Elipas that they had numerous investors lined up but that they would allow him to purchase additional units in UWT as loyalty for being an early investor. Jedynak and Howard represented to Dr. Elipas that the explosive growth and profitability of UWT had caused them to revalue the membership interests and that as of December 2004 a 1% membership interest in UWT was revalued at $1,350,000.

37.    Dr. Elipas asked Jedynak why he had not been receiving distributions and Jedynak responded that the company had further invested in its network and the Dr. Elipas' investment had more than doubled in less than one year. He represented that a sale of the UWT was soon to occur and that Dr. Elipas should borrow more money to invest in more units in UWT.

38.    In reliance on all the forgoing representations, Dr. Elipas purchased an additional 22,222 units in UWT for $600,000 in December 2004.

### Representations Regarding Cozzini's Initial Purchase:

39.    In or about January 2005 Jedynak made representations to Cozzini substantially the same as to Dr. Elipas and the Pavlopouloses as more fully set forth in paragraphs 1 through 38 above.

40.    In reliance on these representations, Cozzini purchased 3,703.70 units in UWT for $100,000.

41.    Initially Cozzini made his check out to UWT, however, Jedynak returned the check to him and both Jedynak and Howard instructed him to make the check payable to "KKJ Holdings" who was authorized to accept the funds on behalf of UWT.

42.    Jedynak and Howard represented to Cozzini that his money would be invested in UWT.

43.    In reliance on these representations, Cozzini reissued the check to KKJ for $100,000.

9

**Representations Regarding Pavlopouloses and Cozzini's Subsequent Purchases**

44.     In or about January 2005 the Pavlopouloses, Cozzini and Dr. Elipas began receiving financial statements on a monthly basis from UWT. The January 2005 income statement showed a monthly net income of $226,042; the February 2005 income statement showed $403,507 in net income; and the March 2005 statement showed a net income of $542,959.

45.     Jedynak and Howard continued to represent to the plaintiffs the phenomenal success of UWT and its explosive growth and profitability. In fact, Howard traveled from California to Chicago to meet with the plaintiffs and other UWT investors to explain UWT's growth and success and to solicit the sale of more UWT securities.

46.     Howard represented to the plaintiffs and other investors that Caterpillar, Inc. was a huge customer of UWT and that it had other Fortune 500 company customers.

47.     Howard represented to the plaintiffs that all of UWT's infrastructure, route development, and debt repayment were complete and that UWT would start shortly making distributions to investors.

48.     John Pavlopoulos asked Jedynak when he was going to get his money from UWT. Jedynak explained that he and Howard had decided not to sell UWT at this time because the company was doing so well and a sale now would leave too much money on the table.

49.     Jedynak represented to all the plaintiffs that UWT had Caterpillar as a huge customer, that Caterpillar was giving UWT $5,000,000 in equipment to use and bringing $4,000,000 per month in revenue to UWT. Jedynak explained to John Pavlopoulos that John was going to get $5,000,000 for his share of UWT when it was sold.

50.     In or about April 2005 Jedynak told the Pavlopouloses and Cozzini that a 1% interest in UWT was now valued at $1,500,000 since the company was now worth over $150,000,000.

51.     In reliance on the forgoing, Jedynak and Howard induced the Pavlopouloses and Cozzini in April 2005 to invest another $200,000 and $100,000 respectively in UWT. Jedynak and Howard told the Pavlopouloses and Cozzini to make

10

their checks and wire transfers to KKJ-1 and that KKJ-1 would forward the money to UWT. The plaintiffs thereafter transferred a total of $300,000 to KKJ-I.

## Defendants Ongoing Representations

52.     Thereafter, all the plaintiffs received UWT's monthly income statements for April 2005 through March 2006 which continued to show substantial monthly profits as follows:

| | |
|---|---|
| April 2005 | $792,234 |
| May 2005 | 819,028 |
| June 2005 | 1,563,931 |
| July 2005 | 1,309,521 |
| August 2005 | 1,520,932 |
| September 2005 | 1,814,498 |
| October 2005 | 1,862,589 |
| November 2005 | 1,229,499 |
| December 2005 | 1,689,025 |
| January 2006 | 783,646 |
| February 2006 | 1,070,132 |
| March 2006 | 1,497,148 |

53.     UWT announced to all the plaintiffs on January 1, 2006 that Gregg Kitter was the new CFO of the company and that he and Jedynak were going to work on selling the company so that Howard could concentrate solely on UWT's business that she represented was growing at a faster than expected pace.

54.     During 2006 the all the plaintiffs began inquiring about when they would start receiving distributions on their investments. Jedynak told them that they were in the process of selling the company for close to a billion dollars and that they should wait for the sale. Jedynak explained that UWT was doing extremely well and he was waiting to sell it because he did not want to leave too much money on the table for a purchaser.

55.     In or about late January 2007 the Pavlopouloses became more concerned and started to press further into the status of their investment in UWT.

56.     Over the next several months the plaintiffs began pressing Jedynak and Howard as to the status of UWT. Suddenly, in or about February or March 2007 the telephones of UWT went dead and its internet site stopped operating.

57.    Recently, the Pavlopolouses discovered an IRS Tax lien that was filed back in April 2006 for $85,000 in unpaid payroll taxed for the 2nd quarter of 2005. UWT was supposedly making over $1 million per month in 2005 without any collection risk since all its customers prepaid 3 to 15 days in advance. Thus, the $85,000 lien appeared to be either an anomaly give its puny amount relative to UWT's reportedly substantial revenues and profits or cause for concern that such reported revenues and profits were fabricated.

58.    Thereafter, Jedynak admitted that UWT had a cash flow problem, but continued to represent that UWT's business and assets had tremendous value and blamed the cash flow situation on Howard, who, in turn started pointing to an alleged fraud by a division of UWT in New York that duped UWT out of several million dollars and Caterpillar's failure to pay an $8,000,000 account receivable.

59.    Jedynak and Howard represented that Caterpillar owed UWT in excess of $8,000,000 and that this claim, and the New York fraud (that the FBI was working on) was the source of UWT's cash crisis.

60.    In April 2007 Jedynak and Howard continued to represent that UWT had $15,475,000 in assets and that its business could be reorganized by the creation of a new company that would sell more stock to raise money to another investor for $10,000,000.

61.    Howard and Jedynak continued to represent that UWT's Caterpillar receivable was worth between $5,000,000 and $8,500,000, and now represented that its foreign licenses were worth $5,700,000.

### Defendants' Misrepresentations

62.    After additional communications with Jedynak and their coordination with other investors, the plaintiffs have recently learned that Howard, Jedynak, Kitter and UWT had perpetrated a massive fraud on them and the other investors. Nearly all of the forging representations made by the defendants to the plaintiffs to induce them to purchase UWT membership interests were false and were known by the defendants to be false at the time they made them. The defendants made the false representations to induce the plaintiffs into giving the defendants money for the purchase of securities of UWT which purchase the plaintiff would not have made had they known the

12

representations to be false. The defendants' misrepresentations are more fully detailed below.

63.     In direct contrast to the defendants' representations, UWT was only a small business operation that was never profitable. All the defendants forgoing representations about the size, growth and profitability of UWT's business were false.

64.     Jedynak's representation that he was a registered representative of InterSecurities, Inc. was false. In fact, at the times of the sales to the plaintiffs, Jedynak was not authorized to represent any broker/dealer registered with the NASD or any other exchange to sell UWT's securities and his activities were not insured by the SIPC.

65.     Jedynak's conduct in acting as a financial and investment advisor for Dr. Elipas was fraudulent since he is not a certified financial planner or a registered investment advisor.

66.     Jedynak misrepresented his position with UWT as set forth in paragraph 8 above.

67.     Defendants' representations that Howard was the former CEO and President of NorthStar were false. The Defendants' representations that Howard sold NorthStar for tens of millions of dollars with only $3,000,000 in capital were false.

68.     Kitter's representations that he was a CPA were false.

69.     Jedynak's representations that he had a cash flow investment opportunity that was about to explode with growth and earnings in the telecommunications business were false.

70.     Jedynak's representations to Dr. Elipas that he would have mentioned UWT sooner, but he wanted to wait until the company was profitable and that its prospects were secure were false.

71.     Jedynak and Howard's representations to the plaintiffs that UWT was particularly well positioned to be a major player in the growing VoIP paradigm to which carriers worldwide were switching were false.

72.     Defendants' representations that UWT had aggregated a staff with relationships and expertise to rival long-time major competitors were false.

13

73.     Defendants' representations that UWT was offering Tier 1, Tier 2 and Tier 3 carriers services to over 100 countries over a state-of-the-art global VoIP network that had boosted traffic from 0 to 4 million minutes in 3 months were false.

74.     Jedynak and Howard' representations to the plaintiffs that UWT owned a $1 million in infrastructure and that it had routes and business developments in place in Columbia, Mexico, Philippines, Taiwan, China, Honduras, UK and other countries were false.

75.     Jedynak and Howard's representations to Dr. Elipas that based just upon contracts that UWT had in place and without anything new coming in, by the end of March 2004, UWT would have distributable monthly cash flow in excess of $30,000 per month, per 1 unit of UWT were false.

76.     Jedynak and Howard's representations to the plaintiffs that based upon what UWT had in the pipeline, UWT would be throwing off a distributable cash flow in excess of $60,000 per month by the end of the 2nd Quarter of '04 and by year end of '04, UWT should be at or near $75,000 per unit per month in distributable cash flow were false.

77.     Jedynak and Howard's representations to Dr. Elipas that UWT would be sold in mid 2005 to a Tier One Carrier and that Dr. Elipas would receive nearly 10 times his original investment were false.

78.     Jedynak and Howard's representations to Dr. Elipas that "1 unit" of UWT was valued at $750,000 and that 1 unit represented a 1% interest in UWT were false.

79.     Jedynak's representations to all the plaintiffs that he personally had invested substantial sums of money in UWT were false.

80.     Howard and Jedynak's representations that UWT had a state-of-the art Internet Protocol (VoIP) network with a fiber optic packet-switched network were false.

81.     Howard and Jedynak's representations that UWT had a larger, more efficient traffic volume that dramatically reduced UWT's cost per call relative to the competition were false.

82.     Howard and Jedynak's representations that UWT operated on a cash-based business where its customers pre-pay every three to fifteen days were false.

83. The defendants' financial statements, profit and loss statements, financial projections and other reports regarding UWT as referred to in paragraphs 19, 20, 26, 27, 28, 35, 44 and 52 above were false.

84. Jedynak's representations that he could make special arrangements to sell UWT membership interests in blocks less than 50,000 were false, rather, Jedynak sold UWT membership interests to whoever would buy them in any increments and without any need to make any "special arrangements."

85. UWT's projected profit and loss statements and revised projected profit and loss statements referred to in paragraphs paragraphs 19, 20, 26, 27, 28, 35, 44 and 52 above were fabricated jointly by Howard, Jedynak and Kitter with no basis in fact whatsoever, but for the sole purposed of inducing the plaintiffs and others to invest in UWT.

86. Jedynak's representations to the Pavlopouloses that their investment in UWT would only be outstanding for only 12 months because UWT would be sold within 12 month for $600,000,000 to $750,000,000 and that the plaintiffs would receive their investment back plus the profits on their investment at the time of sale were false.

87. Jedynak's representations that he personally had several million dollars invested in UWT were false.

88. Howard's representations in her letter of April 12, 2004 that UWT was meeting its projections and is positioned for rapid growth; that UWT had an elaborate international telecommunications network; that UWT had moved from a start-up company to a "take-off" company; that UWT had assembled all the necessary elements to compete with the "big leaguers" in the industry; and that audited financial statements would be sent by the end of the second quarter of 2004 were all false.

89. Jedynak's representations to Thomas Pavlopoulos that KOR wanted to sell because its owner was being sued for tax evasion and he needed the money to pay his fines were false. The plaintiffs are informed and believe that KOR rescinded its purchase of UWT's securities due to the defendants' failure to provide requested financial information.

90. Jedynak representation that the cost of the 6060.605 KOR units was $100,000 because a 1% interest in UWT (50,000 units) was now valued at $825,000

15

instead of $750,000 which was the price of the units at the time of the Pavlopouloses' first purchase were false.

91.     Jedynak's representations that the value of UWT had increased from $75,000,000 in January 2004 to $82,500,000 in August 2004 were false.

92.     Defendants' representations that KKJ-I was a "placement agent" for UWT and Jedynak's representations that he did not receive any money from UWT membership sales were false. Jedynak and Wendy Jedynak were converting to their own personal use all money the KKJ-I through KKJ-IV received from the sale of UWT membership interests.

93.     Jedynak's representations that he would only receive money from UWT membership sales on the "back-end" after all investors were paid their initial investment were false. Jedynak was looting every KKJ transaction for his, Howard and Wendy Jedynak's own personal gain.

94.     The earnings spreadsheets that Howard and Jedynak provided Dr. Elipas regarding UWT's 2004 earnings were false and fabricated.

95.     Jedynak's representations to Dr. Elipas that the UWT 2004 earnings figures and the 2004 financial statements had been audited and reviewed by a reputable accounting firm by the name of Kellogg and Andelson and that the numbers were genuine were false.

96.     Jedynak's representations to the plaintiffs that UWT would be sold in 12 months after the plaintiffs' initial investments were false.

97.     Jedynak and Howard's representations to Dr. Elipas that they had numerous investors lined up but that they would allow him to purchase additional units in UWT as loyalty for being an early investor were false.

98.     Jedynak and Howard representations to Dr. Elipas that the explosive growth and profitability of UWT had caused them to revalue the membership interests and that as of December 2004 a 1% membership interest in UWT was valued at $1,350,000 were false.

99.     Jedynak's representations to Dr. Elipas that he had not been receiving distributions from UWT because the company had further invested in its network and that

Dr. Elipas' investment had more than doubled in less than one year were false. Jedynak's representations to Dr. Elipas that a sale of the UWT was soon to occur were false.

100. Jedynak's representations to Cozzini that his payment to KKJ-I for UWT membership interest would be invested in UWT were false since Jedynak planned to use the money for himself and Wendy Jedynak.

101. Jedynak's representations to Cuzins that its payment to KKJ-I for UWT membership interest would be invested in UWT were false since Jedynak planned to use the money for himself and Wendy Jedynak.

102. The monthly 2005 financial statements that the defendants gave to the plaintiffs showing enormous growth in revenues and net income were completely false and fabricated.

103. Howard and Jedynak's continued representations to the plaintiffs throughout 2005 and 2006 of UWT's explosive growth, profitability and phenomenal success were false. Instead, Howard and Jedynak were taking the investors' money and bilking UWT for nearly all of its cash except for the amounts needed for its modest, unprofitable operations.

104. Defendants' representations that Caterpillar was a huge customer of UWT, that it gave UWT $5,000,000 in equipment to use, that it brought $4,000,000 per month in revenue to UWT, and that UWT had other Fortune 500 companies as customers were all false.

105. Howard's representations to the plaintiffs that all of UWT's infrastructure, route development, and debt repayment was complete and that UWT would start shortly making distributions to investors were false.

106. Jedynak's explanation to the plaintifss that he and Howard had decided not to sell UWT because the company was doing so well was false as was his representation to John Pavlopoulos that John's investment in UWT was worth $5,000,000.

107. The defendants' representations in or about April 2005 that a 1% interest in UWT was valued at $1,500,000 and that the company was worth over $150,000,000 were false.

108. The defendants' representations, in connection with its announcement on January 1, 2006 of Gregg Kitter's new position as CFO of the company, that UWT was growing at a faster than expected pace were false.

109. The 2006 UWT financial statements that the defendants provided to the plaintiffs were false and fabricated to lead the plaintiffs to believe that their investment in UWT was sound.

110. The defendants' representations that they were planning on selling UWT for close to a billion dollars; that UWT's cash flow problems stemmed from a fraud by a company in New York on it; that Caterpillar owed UWT in excess of $8,000,000; and that UWT had foreign licenses worth over $5,700,000 were all false and were made to cover up the fact that UWT had nothing to show for over $20,000,000 in money that it had raised from investors in connection with the sale of its membership interests.

111. The defendants' representations that UWT could be reorganized; that it had $15,475,000 in assets; that the Caterpillar receivable was worth $5,000,000 to $8,500,000; that it had a $10,000,000 investor; and that its foreign licenses were worth $5,700,000 were all false.

112. Jedynak's representation to Dr. Elipas that he had invested $795,000 in UWT was false.

113. At or about the time that Jedynak was taking investors money his personal net worth began to grow as he purchased, demolished and extravagantly rebuilt his and Wendy Jedynak's residence in Northfield which was featured in one or more magazines. Jedynak bragged of his success in several new real estate ventures including a $1,000,000 project in Michigan, a 1200 acre ranch Idaho, 41 acres in Elgin, Illinois, property in Tennessee, and investment in a Texas bank and various stock purchases. The plaintiffs are informed and belief that the some or all of the funds for these projects and investments came from Jedynak and Wendy Jedynak's taking of the plaintiffs' money that was supposed to go to UWT.

114. Jedynak has bragged of his ability to protect assets in the Isle of Man, the Bahamas and other Carribean Islands, South America and he has engaged in international travel to those areas. On one occasion, a witness overheard Jedynak state that he had transferred money from the sale of UWT membership interests overseas with an

18

agreement to split the money with Howard, but that he decided to keep the money for himself.

115. Howard and Jedynak have failed to explain or account for, in any meaningful way, what happened to in excess of $20,000,000 that they received from the sale of UWT membership interests, or why UWT has no significant assets to show from the use of said funds.

116. Howard wrote a letter in May 2006 scoffing at an alleged offer made by a third party in late 2005 to buy UWT for $370,000,000 in cash. In the letter Howard stated that UWT did not even respond to the offer "due to the fact that at the time we were not seriously looking to sell the company." On information and belief, Howard made these ridiculous statements to cover up the fact that UWT was a shell of a business with little or no value and the due diligence by any real buyer of the magnitude of $370,000,000 would quickly uncover the defendants' fraud.

117. UWT has not filed bankruptcy, a receivership, or any other type of liquidation proceedings. It has simply ceased to operate with no forwarding address or phone number. UWT and Howard have defaulted on lawsuits filed creditors of UWT to recover assets.

118. Jedynak and Howard continue to refuse to deal truthfully with the investors of UWT and have engaged in a campaign of misdirection and delay.

119. Jedynak was recently sued in Federal Court in Iowa for fraud in connection with his pocketing over $1,300,000 on a $1,650,000 sale of UWT shares.

120. Shortly after being served with the lawsuit, a witness overheard Jedynak calling Howard and stating that she needed to shred records.

## CLAIMS FOR RELIEF

### COUNT I

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5]**

121. Paragraphs 1 through 120 are re-alleged and incorporated by reference herein.

122. As set forth more fully above, defendants, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or by the use of the mails, in connection with the purchase or sale of securities, have employed devices, schemes, or artifices to defraud, have made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or have engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon the plaintiffs.

123. In particular, as more fully alleged above, the defendants, UWT, Howard, Jedynak, and Kitter, at the time of the sale UWT's membership interests to the plaintiffs and continuing thereafter, intentionally made false statements and omissions of material facts to the plaintiffs regarding UWT and the defendants' intended use of the plaintiffs' funds entrusted to them for the purchase of UWT's membership interests.

124. The defendants made the forgoing false statements and omissions with the knowledge and intent that the plaintiffs would rely thereon, be deceived thereby and to induce them to give the defendants $2,200,000 for the purchase of UWT's membership interests.

125. The plaintiffs justifiably relied on the defendants' false statements and omissions, gave the defendants $2,200,000 for the purchase of membership interests in UWT, and as a direct and proximate result of said false statements and omissions, the defendants have been damaged in the principal sum of $2,200,000.

126. Had the defendants truthfully represented the facts of UWT and their intended use of the plaintiffs' $2,200,000 at the time of the sales, the plaintiffs would not have purchased the membership interests of UWT and would not have given the defendants $2,200,000.

127. The defendants have concealed and continue to conceal their fraud from the plaintiffs and other investors of UWT.

128. The plaintiffs are informed and believe that the Jedynak Entities were formed to avoid the claims of creditors of Jedynak that may arise out of the forgoing fraud.

129. The Jedynak Entities are the alter ego or a mere conduit of Jedynak and Wendy Jedynak and the corporate veil should be pierced to impose liability on Jedynak and Wendy Jedynak personally.

130. The plaintiffs are informed and believe that the Jedynak Entities were: (1) inadequately capitalized; (2) failed to issue stock; (3) failed to observe corporate formalities; (4) are insolvent; (5) do not have corporate records; (6) commingled fund with those of Jedynak, Wendy Jedynak and each other; (7) have diverted assets from the UWT and the plaintiffs; (8) have failed to maintain arm's-length relationship with each other; and (9) are a mere facade for Jedynak and Wendy Jedynak.

WHEREFORE, the plaintiffs pray as follows:

A.    for judgment in their favor and against the defendants, Jedynak, Howard, UWT, Kitter, Wendy Jedynak and the Jedynak Entities, jointly and severally, in the amount of $2,100,000 plus prejudgment interest;

B.    that the court pierce the corporate veil of the Jedynak Entities and hold the defendants, Jedynak and Wendy Jedynak, personally liable for the obligations of said entities;

C.    for an accounting of the defendants' use of the plaintiffs' funds and a constructive trust on all of the defendants' assets purchased with the plaintiffs' money;

D.    for their costs of suit, including attorneys' fees;

E.    for such other relief as this court may deem proper.

## COUNT II
## RESCISSION UNDER ILLINOIS
## SECURITIES LAW

131. Paragraphs 1 through 120 are re-alleged and incorporated by reference herein.

132.    In connection with the defendants' sale of membership interests in UWT to the plaintiffs, the defendants violated subsections F and G of section 13 of the Illinois Securities Law ("Act") in that each of them:

      a.    engaged in transactions, course of business and practices in connection with the sale of the UWT's membership interests which worked or tended to work a fraud or deceit upon the plaintiffs; and

      b.    the defendants obtained money from the plaintiffs through the sale of UWT membership interests by means of untrue statements of a material fact and by means of their omissions to state material facts necessary to make the statements that they made not misleading.

133.    Section 13 of the Act provides for private and other civil remedies for the defendants' wrongful conduct as follows:

"A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesperson who shall have participated or aided in any way in making the sale, and in case the issuer, controlling person, underwriter or dealer is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making the sale, shall be jointly and severally liable to the purchaser as follows:

(1) for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold or, where the securities were not received, of any contract made in respect of the sale;..."

134.    Section 13 of the Act further provides that:

"If the purchaser shall prevail in any action brought to enforce any of the

remedies provided in this subsection, the court shall assess costs together
with the reasonable fees and expenses of the purchaser's attorney against
the defendant."

135.     The defendants have concealed and continue to conceal their fraud from
the plaintiffs and other investors of UWT.

136.     The plaintiffs first learned between March and May of 2007 that the
defendants' representations were false, and that UWT was a sham and a fraud with no
material assets or business.

137.     Accordingly, the plaintiffs gave notice to the defendants of their rights to
rescission of their purchases of the membership interests in UWT in accordance with the
terms of the Act, copies of which are attached hereto as **Exhibit 1.**

138.     The defendants have ignored the plaintiffs' notices and have failed and
refused to grant rescission to the plaintiffs in accordance with the terms of the Act.

139.     Paragraphs 128-130 are realleged and incorporated herein.

WHEREFORE, the plaintiffs pray as follows:

   A. for judgment in their favor and against the defendants, jointly and severally, in
      the amount of $2,100,000 plus prejudgment interest at the rate of 10% per
      annum from the date of purchase of said securities;

   B. that the court pierce the corporate veil of the Jedynak Entities and hold the
      defendants personally liable;

   C. for an accounting of the defendants' use of the plaintiffs' funds and a
      constructive trust on all of the defendants' assets purchase with the plaintiffs'
      money;

   D. for their costs of suit, including attorneys' fees;

   E. for such other relief as this court may deem proper.

### COUNT III
### NEGLIGENT MISREPRESENTATION

140.     Paragraphs 1 through 120 are re-alleged and incorporated by reference
herein.

23

141.     The defendants had a duty to the plaintiff to communicate accurate information to them in connection with their solicitation of the plaintiffs to purchase membership interests in UWT.

142.     As heretofore alleged the defendants made numerous false statements of material facts to the plaintiffs and were careless or negligent in ascertaining the truth of the statements before making them.

143.     The defendants made the forgoing false statements with the intention that the plaintiffs would rely upon them, and the plaintiffs did, in fact, rely on the truth of the defendants' statements.

144.     By reason of the plaintiff's reliance on the defendants' false statements they purchased membership interests in UWT for $2,200,000 which they would not have purchased had they known the defendants' statements were false.

145.     The plaintiffs' investment in UWT is worthless and the plaintiffs have been damaged in the amount of $2,200,000.

146. Paragraphs 128 through 130 are realleged and incorporated herein.

WHEREFORE, the plaintiffs pray as follows:

A.     for judgment in their favor and against the defendants, jointly and severally, in the amount of $2,100,000 plus prejudgment interest from the date of purchase of said securities;

B.     that the court pierce the corporate veil of the Jedynak Entities and hold the defendants personally liable;

C.     for an accounting of the defendants' use of the plaintiffs' funds and a constructive trust on all of the defendants' assets purchase with the plaintiffs' money;

D.     for their costs of suit, including attorneys' fees;

E.     for such other relief as this court may deem proper.

## COUNT IV
## COMMON LAW FRAUD

147.     Paragraphs 1 through 120 are re-alleged and incorporated by reference herein.

148.     As heretofore alleged, the plaintiffs' purchased membership interests in UWT.

149.     The defendants procured the plaintiffs purchases of the membership interests by fraud, in that the defendants made numerous misrepresentations to the plaintiffs as heretofore alleged.

150.     Said representations were false, and were made by the defendants with knowledge of their falsity, or with reckless disregard as to their truth or falsity, with the intent that the plaintiffs should believe the same, and should rely and act thereon, and should be deceived and defrauded thereby.

151.     Plaintiffs believe and relied on said misrepresentations, and, so believing and relying, were thereby induced to, and did pay the defendants $2,100,000 for the purchase of membership interests in UWT, which the plaintiffs would not have done had they known that the representations were false.

152.     The defendants have concealed and continue to conceal their fraud from the plaintiffs and other investors of UWT.

153.     By reason of the premises, plaintiffs have been damaged in the sum of $2,100,000.

154.     The defendants conduct was willful and malicious and intended to injure the plaintiffs.

155.     Paragraphs 128 through 130 are realleged and incorporated herein.

WHEREFORE, the plaintiffs pray as follows:

  A. for judgment in their favor and against the defendants, jointly and severally, in the amount of $2,100,000 plus prejudgment interest from the date of purchase of said securities;

  B. that the court pierce the corporate veil of the Jedynak Entities and hold the defendants personally liable;

C. for an accounting of the defendants' use of the plaintiffs' funds and a constructive trust on all of the defendants' assets purchase with the plaintiff's money;

D. for their costs of suit, including attorneys' fees;

E. for such other relief as this court may deem proper.

## COUNT V
## FRAUDULENT CONVEYANCES
## 740 ILCS 160/5(a).

156.    Paragraphs 1 through 155 are re-alleged and incorporated by reference herein.

157.    At all relevant times the plaintiffs, as well as many other investors and creditors of UWT were "creditors" holding "claims" against each of the defendants by reason of the defendants' wrongful and fraudulent conduct against them as such terms "creditor" and "claims" are defined in the Illinois Uniform Fraudulent Transfer Act ("UFTA").

158.    At all relevant times UWT, Howard, KKJ and Jedynak were debtors as the term "debtor'" is defined in the UFTA.

159.    The plaintiffs are informed and belief that Jedynak transferred assets to Wendy Jedynak, the Jedynak Entities and to others unknown at this time with actual intent to hinder, delay, or defraud his creditors; or, alternatively, that he made transfers to said persons without receiving reasonably equivalent value in exchange for the transfer or obligation, and he was engaged or was about to engage in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction. Included in such fraudulent transfers heretofore alleged is Jedynak's transfer of his interest in the premises at 2222 Bracken Lane, Northfield, Illinois on May 5, 2006.

160.    The plaintiffs are informed and believe that Howard transferred assets to others unknown at this time with actual intent to hinder, delay, or defraud her creditors; or, alternatively, that she made transfers to said persons without receiving reasonably equivalent value in exchange for the transfer or obligation, and she was engaged or was

26

about to engage in a business or a transaction for which her remaining assets were unreasonably small in relation to the business or transaction.

WHEREFORE, the plaintiffs pray as follows:

A. for judgment in their favor and against the defendants, jointly and severally, in the amount of $2,100,000 plus prejudgment interest from the date of purchase of said securities;

B. for an accounting of the defendants' use of plaintiffs' funds and a constructive trust on all of the defendants assets purchased with the plaintiffs' money;

C. That the transfers in violation of the UFTA be voided and said assets be recovered for the purposes of satisfying a judgment against the defendants;

D. for their costs of suit, including attorneys' fees;

E. for such other relief as this court may deem proper.

## JURY DEMAND

161.     The plaintiffs demand a jury in this matter.

Dated: May **30**, 2007                                Respectfully submitted,

                                                                Michael R. Collins – one of plaintiffs
                                                                attorneys

Michael R. Collins
COLLINS & COLLINS
8 South Michigan Ave., Ste. 1414
Chicago, IL 60603
312-201-8700
michael.collins@collinsandcollins.com
ARDC#6194168

LAW OFFICES

## COLLINS & COLLINS

8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
-------
(312) 201-8700
Fax (312) 606-0234

May 22, 2007

**Via Certified Mail**
James Jedynak
2222 Bracken Lane
Northfield IL 60093

        Re:    Pavlopoulos, et.al. v. Jedynak et.al.
               Our File No.: PAV 07002

Dear Mr. Jedynak:

       I represent Dr. James Elipas. He has just learned of the existence of a cause of action against you for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to him of membership interests in Unified Worldwide Transport, LLC ("UWT").

       In connection with your sale of membership interests in UWT to him you violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

          a.     engaged in transactions, course of business and practices with him in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon him; and

          b.     you obtained money from him through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

       As a result of your violations of the Illinois Securities Law, Dr. Elipas DEMANDS RESCISSION as follows:

| | |
|---|---:|
| Investment | $1,350,000.00 |
| Interest through May 22, 2007 @10% | 412,500.00 |
| Less Payments | ( 722.00) |
| Total Due | $1,761,788.00 |

Failure to make the forgoing rescission payments within the time provided by law will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies he may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

Furthermore, please direct all of your communications to me and do not contact my clients directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY: _____
Michael R. Collins

MRC/mrc
Encls.
CC:    Dr. Elipas



**U.S. Postal Service** ⊓
**CERTIFIED MAIL** ⊓ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com⬦

# OFFICIAL USE

| | | | |
|---|---|---|---|
| Postage | $ | | |
| Certified Fee | | | Postmark Here |
| Return Receipt Fee (Endorsement Required) | | | |
| Restricted Delivery Fee (Endorsement Required) | | | |
| Total Postage & Fees | $ | | |

Sent To  James Jedynak

Street, Apt. No.; or PO Box No.  2222 Bracken Lane

City, State, ZIP+4  Northfield, IL 60093

PS Form 3800, August 2006                    See Reverse for Instructions

7007 0710 0001 5681 7486

LAW OFFICES
## COLLINS & COLLINS
8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
-------
(312) 201-8700
Fax (312) 606-0234

May 22, 2007

**Via Certified Mail**
B. Gail Howard
24353 Mornington Dr.
Valencia, CA 91355

      Re:    Pavlopoulos et.al. v. Jedynak et.al.
              Our File No.:  PAV 07002

Dear Ms. Howard:

      I represent Dr. James Elipas.  He has just learned of the existence of a cause of action against you for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to him of membership interests in Unified Worldwide Transport, LLC ("UWT").

      In connection with your sale of membership interests in UWT to him you violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

      a.     engaged in transactions, course of business and practices with him in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon him; and

      b.     you obtained money from him through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

      As a result of your violations of the Illinois Securities Law, Dr. Elipas DEMANDS RESCISSION as follows:

| | |
|---|---|
| Investment | $1,350,000.00 |
| Interest through May 22, 2007 @10% | 412,500.00 |
| Less Payments | (    722.00) |
| Total Due | $1,761,788.00 |

Failure to make the forgoing rescission payments within the time provided by law will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies he may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

Furthermore, please direct all of your communications to me and do not contact Dr. Elipas directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY:

Michael R. Collins

MRC/mrc
Encls.
CC:    Dr. Elipas



**U.S. Postal Service** ₍₎
**CERTIFIED MAIL**₍₎ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com₍₎.

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | Postmark Here |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To
B. Gail Howard

Street, Apt. No.; or PO Box No. 24353 Mornington Dr.

City, State, ZIP+4 Valencia, CA 91355

PS Form 3800, August 2006                          See Reverse for Instructions

7007 0710 0001 5681 7479

LAW OFFICES
## COLLINS & COLLINS
8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
-------
(312) 201-8700
Fax (312) 606-0234

May 22, 2007

**Via Certified Mail**
Unified Worldwide Transport, LLC
B. Gail Howard
19100 Von Karmon Ave
Irvine, CA 92612

      Re:    Pavlopoulos, et.al. v. Jedynak et.al.
              Our File No.: PAV 07002

Dear Ms. Howard:

        I represent Dr. James Elipas. He has just learned of the existence of a cause of action against you for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to him of membership interests in Unified Worldwide Transport, LLC ("UWT").

        In connection with your sale of membership interests in UWT to him you violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

        a.     engaged in transactions, course of business and practices with him in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon him; and

        b.     you obtained money from him through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

        As a result of your violations of the Illinois Securities Law, Dr. Elipas DEMANDS RESCISSION as follows:

| | |
|---|---|
| Investment | $1,350,000.00 |
| Interest through May 22, 2007 @10% | 412,500.00 |
| Less Payments | ( 722.00) |
| Total Due | $1,761,788.00 |

Failure to make the forgoing rescission payments within the time provided by law will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies he may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

Furthermore, please direct all of your communications to me and do not contact my clients directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY:

Michael R. Collins

MRC/mrc
Encls.
CC:    Dr. Elipas



LAW OFFICES

# COLLINS & COLLINS

8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
-------
(312) 201-8700
Fax (312) 606-0234

May 22, 2007

**Via Certified Mail**
James Jedynak
KKJ Holdings, LLC
KKJ Holdings II, Inc.
KKJ Holdings III, LLC
KKJ Holdings IV, LLC
1235 Shermer Rd
Northbrook, IL 60062

    Re:    Pavlopoulos, et.al. v. Jedynak et.al.
           Our File No.: PAV 07002

Dear Mr. Jedynak:

    I represent Dr. James Elipas. He has just learned of the existence of a cause of action against you and the above named entities for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to him of membership interests in Unified Worldwide Transport, LLC ("UWT").

    In connection with your sale of membership interests in UWT to him you and the forgoing entities violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

    a.    engaged in transactions, course of business and practices with him in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon him; and

    b.    you obtained money from him through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

    As a result of your violations of the Illinois Securities Law, Dr. Elipas DEMANDS RESCISSION as follows:

|  |  |
|---|---|
| Investment | $1,350,000.00 |
| Interest through May 22, 2007 @10% | 412,500.00 |
| Less Payments | ( 722.00) |

Total Due                    $1,761,788.00

Failure to make the forgoing rescission payments within the time provided by law will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies he may deem appropriate.  When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

Furthermore, please direct all of your communications to me and do not contact my clients directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY:

Michael R. Collins

MRC/mrc
Encls.
CC:    Dr. Elipas

**U.S. Postal Service**
**CERTIFIED MAIL** (1) **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

*Sent To*
James Jedynak
*Street, Apt. No.; or PO Box No.* 1235 Shermer Rd.
*City, State, ZIP+4* Northbrook, IL 60062

PS Form 3800, August 2006       See Reverse for Instructions

7007 0710 0001 5681 7493

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

James Jedynak
KKJ Holdings, LLC
KKJ Holdings II, Inc.
KKJ Holdings, III, LLC
KKJ Holdings IV, LLC
1235 Shermer Rd.
Northbrook, IL 60062

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X     ☐ Agent   ☐ Addressee

B. Received by ( *Printed Name* )    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*    ☐ Yes

2. Article Number
   *(Transfer from service label)*    7007 0710 0001 5681 7493

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

LAW OFFICES
# COLLINS & COLLINS
8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
-------
(312) 201-8700
Fax (312) 606-0234

April 12, 2007

**Via Certified Mail**
James Jedynak
Asset Protection, Inc.
1235 Shermer Road
Northbrook, IL 60062

    Re:  Pavlopoulos v. Jedynak et.al.
        Our File No.: PAV 07002

Dear Mr. Jedynak:

    I represent John Pavlopoulos, Thomas Pavlopoulos and Dennis Pavlopoulos. Each of them has just learned of the existence of a cause of action against Asset Protection, Inc. ("API") for its participation with you in violations of the Illinois Securities Law, Section 10b-5 of the federal Securities law, and Illinois common law fraud in connection with the sale to them of membership interests in Unified Worldwide Transport, LLC ("UWT").

    In connection with API's participation in the sale of membership interests in UWT to my clients it violated subsections F and G of Section 13 of the Illinois Securities Law in that it, through you:

    a.  engaged in transactions, course of business and practices with them in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon my clients; and

    b.  obtained money from my clients through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

    As a result of your violations of the Illinois Securities Law, my clients DEMAND RESCISSION as follows:

    **John Pavlopoulos**

| | |
|---|---|
| Investment | $325,000.00 |
| Interest through March 21, 2007 @10% | 94,179.08 |
| Less Payments | (2,269.00) |

Total Due John Pavlopoulos      $416,910.08

**Thomas Pavlopoulos**
| | |
|---|---|
| Investment | $175,000.00 |
| Interest through March 21, 2007 at 10% | 40,237.43 |
| Total Due Thomas Pavlopoulos | $215,237.43 |

**Dennis Pavlopoulos**
| | |
|---|---|
| Investment | $ 50,000.00 |
| Interest through March 21, 2007 @10% | 9,589.04 |
| Total Due Dennis Pavlopoulos | $ 59,589.04 |

    Failure to make the forgoing rescission payments within 10 days from the date of this letter will result in a lawsuit being filed against API for its participation with you in the violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies my clients may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

    Furthermore, please direct all of your communications to me and do not contact my clients directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY:

Michael R. Collins

MRC/mrc
Encls.
CC:    J. Pavlopolous

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To
*James Jedynek*

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

7006 0810 0002 2374 1522

PS Form 3800, June 2002        See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

James Jedynak
Asset Protection, Inc.
1235 Shermer Rd.
Northbrook, IL 60062

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
*James Jedek*    6-10-07

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7006 0810 0002 2374 15

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

LAW OFFICES

# COLLINS & COLLINS

8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
------
(312) 201-8700
Fax (312) 606-0234



April 19, 2007

**Via Certified Mail**
James Jedynak
KKJ Holdings, LLC
1235 Shermer Rd
Northbrook, IL 60062

      Re:    Pavlopoulos v. Jedynak et.al.
             Our File No.: PAV 07002

Dear Mr. Jedynak:

      I represent John Pavlopoulos, Thomas Pavlopoulos and Dennis Pavlopoulos. Each of them has just learned of the existence of a cause of action against you for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to them of membership interests in Unified Worldwide Transport, LLC ("UWT").

      In connection with your sale of membership interests in UWT to them you violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

      a.     engaged in transactions, course of business and practices with them in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon them; and

      b.     you obtained money from them through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

      As a result of your violations of the Illinois Securities Law, my clients DEMAND RESCISSION as follows:

**John Pavlopoulos**

| | |
|---|---|
| Investment | $325,000.00 |
| Interest through March 21, 2007 @10% | 94,179.08 |
| Less Payments | (2,269.00) |
| Total Due John Pavlopoulos | $416,910.08 |

**Thomas Pavlopoulos**

| | |
|---|---|
| Investment | $175,000.00 |
| Interest through March 21, 2007 at 10% | 40,237.43 |
| Total Due Thomas Pavlopoulos | $215,237.43 |

**Dennis Pavlopoulos**

| | |
|---|---|
| Investment | $ 50,000.00 |
| Interest through March 21, 2007 @10% | 9,589.04 |
| Total Due Dennis Pavlopoulos | $ 59,589.04 |

Failure to make the forgoing rescission payments within 10 days from the date of this letter will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies they may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

Furthermore, please direct all of your communications to me and do not contact my clients directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY: _____
Michael R. Collins

MRC/mrc
Encls.
CC:    J. Pavlopolous



LAW OFFICES

## COLLINS & COLLINS

8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
-------
(312) 201-8700
Fax (312) 606-0234

April 12, 2007

**Via Certified Mail**
Unified Worldwide Transport, LLC
B. Gail Howard
19100 Von Karmon Ave
Irvine, CA 92612

       Re:    Pavlopoulos v. Jedynak et.al.
               Our File No.: PAV 07002

Dear Ms Howard:

      I represent John Pavlopoulos, Thomas Pavlopoulos and Dennis Pavlopoulos. Each of them has just learned of the existence of a cause of action against Unified Worldwide Transport, LLC ("UWT") for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with its sale to them of its membership interests.

      In connection with UWT's sale of it membership interests to them it violated subsections F and G of Section 13 of the Illinois Securities Law in that its agents:

        a.      engaged in transactions, course of business and practices with my clients in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon them; and

        b.      obtained money from my clients through the sale of UWT membership interests by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

      As a result of UWT's violations of the Illinois Securities Law, my clients DEMAND RESCISSION as follows:

| **John Pavlopoulos** | |
|---|---:|
| Investment | $325,000.00 |
| Interest through March 21, 2007 @10% | 94,179.08 |
| Less Payments | (2,269.00) |
| Total Due John Pavlopoulos | $416,910.08 |

**Thomas Pavlopoulos**

| | |
|---|---|
| Investment | $175,000.00 |
| Interest through March 21, 2007 at 10% | 40,237.43 |
| Total Due Thomas Pavlopoulos | $215,237.43 |

**Dennis Pavlopoulos**

| | |
|---|---|
| Investment | $ 50,000.00 |
| Interest through March 21, 2007 @10% | 9,589.04 |
| Total Due Dennis Pavlopoulos | $ 59,589.04 |

Failure to make the forgoing rescission payments within 10 days from the date of this letter will result in a lawsuit being filed against UWT for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies my clients may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

Furthermore, please direct all of your communications to me and do not contact my clients directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY:

Michael R. Collins

MRC/mrc
Encls.
CC: J. Pavlopolous



LAW OFFICES

# COLLINS & COLLINS

8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
-------
(312) 201-8700
Fax (312) 606-0234

April 12, 2007

**Via Certified Mail**
B. Gail Howard
24353 Mornington Dr.
Valencia, CA 91355

        Re:    Pavlopoulos v. Jedynak et.al.
               Our File No.: PAV 07002

Dear Ms. Howard:

I represent John Pavlopoulos, Thomas Pavlopoulos and Dennis Pavlopoulos. Each of them has just learned of the existence of a cause of action against you for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to them of membership interests in Unified Worldwide Transport, LLC ("UWT").

In connection with your sale of membership interests in UWT to them you violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

     a.    engaged in transactions, course of business and practices with my clients in connection with the sale of UWT membership interests which worked or tended to work a fraud or deceit upon them; and

     b.    you obtained money from my clients through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

As a result of your violations of the Illinois Securities Law, my clients DEMAND RESCISSION as follows:

**John Pavlopoulos**

| | |
|---|---:|
| Investment | $325,000.00 |
| Interest through March 21, 2007 @10% | 94,179.08 |
| Less Payments | (2,269.00) |
| Total Due John Pavlopoulos | $416,910.08 |

**Thomas Pavlopoulos**

| | |
|---|---|
| Investment | $175,000.00 |
| Interest through March 21, 2007 at 10% | 40,237.43 |
| Total Due Thomas Pavlopoulos | $215,237.43 |

**Dennis Pavlopoulos**

| | |
|---|---|
| Investment | $ 50,000.00 |
| Interest through March 21, 2007 @10% | 9,589.04 |
| Total Due Dennis Pavlopoulos | $ 59,589.04 |

      Failure to make the forgoing rescission payments within 10 days from the date of this letter will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies they may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

      Furthermore, please direct all of your communications to me and do not contact my clients directly without my authorization.

                      Very truly yours,

                      COLLINS & COLLINS

                      BY:

                            Michael R. Collins

MRC/mrc
Encls.
CC:    J. Pavlopolous



LAW OFFICES

# COLLINS & COLLINS

8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
———
(312) 201-8700
Fax (312) 606-0234

April 12, 2007

**Via Certified Mail**
James Jedynak
2222 Bracken Lane
Northfield IL 60093

    Re:  Pavlopoulos v. Jedynak et.al.
        Our File No.: PAV 07002

Dear Mr. Jedynak:

   I represent John Pavlopoulos, Thomas Pavlopoulos and Dennis Pavlopoulos. Each of them has just learned of the existence of a cause of action against you for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to them of membership interests in Unified Worldwide Transport, LLC ("UWT").

   In connection with your sale of membership interests in UWT to them you violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

   a.  engaged in transactions, course of business and practices with them in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon them; and

   b.  you obtained money from them through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

   As a result of your violations of the Illinois Securities Law, my clients DEMAND RESCISSION as follows:

**John Pavlopoulos**

| | |
|---|---:|
| Investment | $325,000.00 |
| Interest through March 21, 2007 @10% | 94,179.08 |
| Less Payments | (2,269.00) |
|   Total Due John Pavlopoulos | $416,910.08 |

**Thomas Pavlopoulos**

| | |
|---|---|
| Investment | $175,000.00 |
| Interest through March 21, 2007 at 10% | 40,237.43 |
| Total Due Thomas Pavlopoulos | $215,237.43 |

**Dennis Pavlopoulos**

| | |
|---|---|
| Investment | $ 50,000.00 |
| Interest through March 21, 2007 @10% | 9,589.04 |
| Total Due Dennis Pavlopoulos | $ 59,589.04 |

Failure to make the forgoing rescission payments within 10 days from the date of this letter will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies they may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

Furthermore, please direct all of your communications to me and do not contact my clients directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY: _____
Michael R. Collins

MRC/mrc
Encls.
CC:    J. Pavlopolous



LAW OFFICES
# COLLINS & COLLINS
8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
-------
(312) 201-8700
Fax (312) 606-0234

May 22, 2007

**<u>Via Certified Mail</u>**
James Jedynak
KKJ Holdings, LLC
KKJ Holdings II, Inc.
KKJ Holdings III, LLC
KKJ Holdings IV, LLC
1235 Shermer Rd
Northbrook, IL 60062

   Re:  Pavlopoulos et.al. v. Jedynak et.al.
       Our File No.:  PAV 07002

Dear Mr. Jedynak:

   I represent Mr. Ivo Cozzini.  He has just learned of the existence of a cause of action against you for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to him of membership interests in Unified Worldwide Transport, LLC ("UWT").

   In connection with your sale of membership interests in UWT to him you violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

   a.  engaged in transactions, course of business and practices with him in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon him; and

   b.  you obtained money from him through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

   As a result of your violations of the Illinois Securities Law, Mr. Cozzini DEMANDS RESCISSION as follows:

| | |
|---|---|
| Investment | $200,000.00 |
| Interest through May 22, 2007 @10% | 147,500.00 |
| Less Payments | -0- |

Total Due                    $347,500.00

       Failure to make the forgoing rescission payments within the time provided by law will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies he may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

       Furthermore, please direct all of your communications to me and do not contact Mr. Cozzini directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY: _____
Michael R. Collins

MRC/mrc
Encls.
CC:    Ivo Cozzini

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

James Jedynak
KKJ Holdings, LLC
KKJ Holdings II, Inc.
KKJ Holdings, III, LLC
KKJ Holdings IV, LLC
1235 Shermer Rd.
Northbrook, IL 60062

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☐ Agent
☐ Addressee

B. Received by ( *Printed Name* )  C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

2. Article Number
(*Transfer from service label*)

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL** RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To
James Jedynak

Street, Apt. No.; or PO Box No.   1235 Shermer Rd.

City, State, ZIP+4
Northbrook, IL 60062

PS Form 3800, August 2006      See Reverse for Instructions

7007 0710 0001 5681 7493

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL

7493
7007 0710 0001 5681

LAW OFFICES

# COLLINS & COLLINS

8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
-------
(312) 201-8700
Fax (312) 606-0234

May 22, 2007

**Via Certified Mail**
B. Gail Howard
24353 Mornington Dr.
Valencia, CA 91355

       Re:   Pavlopoulos et.al. v. Jedynak et.al.
             Our File No.: PAV 07002

Dear Ms. Howard:

I represent Mr. Ivo Cozzini. He has just learned of the existence of a cause of action against you for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to him of membership interests in Unified Worldwide Transport, LLC ("UWT").

In connection with your sale of membership interests in UWT to him you violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

     a.    engaged in transactions, course of business and practices with him in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon him; and

     b.    you obtained money from him through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

As a result of your violations of the Illinois Securities Law, Mr. Cozzini DEMANDS RESCISSION as follows:

| | |
|---|---|
| Investment | $200,000.00 |
| Interest through May 22, 2007 @10% | 147,500.00 |
| Less Payments | -0- |
| Total Due | $347,500.00 |

Failure to make the forgoing rescission payments within the time provided by law will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies he may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

Furthermore, please direct all of your communications to me and do not contact Mr. Cozzini directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY: Michael R. Collins

MRC/mrc
Encls.
CC: Ivo Cozzini

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

B. Gail Howard
24353 Mornington Dr.
Valencia, CA 91355

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☐ Agent ☐ Addressee

B. Received by (*Printed Name*) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

2. Article Number
(Transfer from service label)

PS Form 3811, February 2004 — Domestic Return Receipt — 102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To
B. Gail Howard
Street, Apt. No.;
or PO Box No. 24353 Mornington Dr.
City, State, ZIP+4
Valencia, CA 91355

PS Form 3800, August 2006 — See Reverse for Instructions

7007 0710 0001 5681 7479

LAW OFFICES
# COLLINS & COLLINS
8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603
------
(312) 201-8700
Fax (312) 606-0234

May 22, 2007

**Via Certified Mail**
Unified Worldwide Transport, LLC
B. Gail Howard
19100 Von Karmon Ave
Irvine, CA 92612

       Re:    Pavlopoulos et.al. v. Jedynak et.al.
              Our File No.:  PAV 07002

Dear Ms. Howard:

       I represent Mr. Ivo Cozzini.  He has just learned of the existence of a cause of action against you for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to him of membership interests in Unified Worldwide Transport, LLC ("UWT").

       In connection with your sale of membership interests in UWT to him you violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

       a.     engaged in transactions, course of business and practices with him in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon him; and

       b.     you obtained money from him through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

       As a result of your violations of the Illinois Securities Law, Mr. Cozzini DEMANDS RESCISSION as follows:

| | |
|---|---:|
| Investment | $200,000.00 |
| Interest through May 22, 2007 @10% | 147,500.00 |
| Less Payments | -0- |
| Total Due | $347,500.00 |

Failure to make the forgoing rescission payments within the time provided by law will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies he may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

Furthermore, please direct all of your communications to me and do not contact Mr. Cozzini directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY: _____
Michael R. Collins

MRC/mrc
Encls.
CC:    Ivo Cozzini

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage | $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees | $

Postmark
Here

Sent To B. Gail Howard

Street, Apt. No.;
or PO Box No. 19100 Von Karmon Ave.

City, State, ZIP+4 Irvine, CA 92612

PS Form 3800, August 2006
See Reverse for Instructions

7007 0720 0000 5685 7509
7007 0720 0000 5685 7509

CERTIFIED MAIL™
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7007 0720 0000 5685 7509

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

Unified Worldwide Transport, LLC
B. Gail Howard
19100 Von Karmon Ave
Irvine, CA 92612

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X
☐ Agent
☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

LAW OFFICES

# COLLINS & COLLINS

8 SOUTH MICHIGAN AVENUE
SUITE 1414
CHICAGO, ILLINOIS 60603

--------

(312) 201-8700
Fax (312) 606-0234

May 22, 2007

**<u>Via Certified Mail</u>**
James Jedynak
2222 Bracken Lane
Northfield IL 60093

> Re:    Pavlopoulos et.al. v. Jedynak et.al.
>        Our File No.:  PAV 07002

Dear Mr. Jedynak:

I represent Mr. Ivo Cozzini. He has just learned of the existence of a cause of action against you for violations of the Illinois Securities Law, securities fraud under Section 10b-5 of the federal Securities law, and fraud under the Illinois common law in connection with your sale to him of membership interests in Unified Worldwide Transport, LLC ("UWT").

In connection with your sale of membership interests in UWT to him you violated subsections F and G of Section 13 of the Illinois Securities Law in that you:

a.     engaged in transactions, course of business and practices with him in connection with the sale of the UWT membership interests which worked or tended to work a fraud or deceit upon him; and

b.     you obtained money from him through the sale of UWT membership interest by means of untrue statements of a material fact and by means of your omissions to state material facts necessary to make the statements that you did make not misleading.

As a result of your violations of the Illinois Securities Law, Mr. Cozzini DEMANDS RESCISSION as follows:

| | |
|---|---|
| Investment | $200,000.00 |
| Interest through May 22, 2007 @10% | 147,500.00 |
| Less Payments | -0- |
| Total Due | $347,500.00 |

Failure to make the forgoing rescission payments within the time provided by law will result in a lawsuit being filed against you for violation of the forgoing sections of the Illinois Securities Law, together with claims under Section 10b-5 of the Federal Securities Law, fraud pursuant to Illinois common law and any other remedies he may deem appropriate. When making payment, please acknowledge the enclosed Notice of Attorney's Lien.

Furthermore, please direct all of your communications to me and do not contact Mr. Cozzini directly without my authorization.

Very truly yours,

COLLINS & COLLINS

BY: _____
Michael R. Collins

MRC/mrc
Encls.
CC:     Ivo Cozzini

## U.S. Postal Service
## CERTIFIED MAIL RECEIPT
### (Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To James Jedynak

Street, Apt. No.; 2222 Bracken Lane
or PO Box No.

City, State, ZIP+4 Northfield, IL 60093

PS Form 3800, August 2006                See Reverse for Instructions

7007 0710 0001 5681 7486
7007 0710 0001 5681 7486

CERTIFIED MAIL™
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7007 0710 0001 5681 7486

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

James Jedynak
2222 Bracken Lane
Northfield, IL 60093

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)        ☐ Yes

2. Article Number
(Transfer from service label)

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by ( *Printed Name* )  C. Date of Delivery |
| 1. Article Addressed to:<br>James Jedynak<br>KKJ Holdings, LLC<br>KKJ Holdings II, Inc.<br>KKJ Holdings, III, LLC<br>KKJ Holdings IV, LLC<br>1235 Shermer Rd.<br>Northbrook, IL 60062 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☐ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*)  ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*) | 7007 0710 0001 5681 7493 |

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540