## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DR. JAMES ELIPAS, JOHN PAVLOPOULOS, THOMAS PAVLPOULOS, DENNIS PAVLOPOULOS, AND IVO COZZINI, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 07-C-3026 |
| JAMES K. JEDYNAK; B. GAIL HOWARD; UNIFIED WORLDWIDE TRANSPORT, LLC; KKJ HOLDINGS, LLC; KKJ HOLDINGS II, INC.; KKJ HOLDINGS, III, LLC; KKJ HOLDINGS IV, LLC; ASSET PROTECTION, INC.; UNLIMITED OPTIONS, INC.; PROSPEROUS ENDEAVORS LIMITED PARTNERSHIP; PACIFIC COAST HOLDING GROUP, LLC; GREG KITTER; and WENDY JEDYNAK, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| JAMES K. JEDYNAK, | ) ) | |
| Counter Plaintiff, | ) ) | |
| v. | ) ) | |
| JAMES ELIPAS, | ) ) | |
| Counter Defendant. | ) | |
| BRIAN A. KING, JANICE MIGON, ROSA AND TONY PEREZ, ANDREW BENNETT, LARRY J. LIEBOVICH LIVING TRUST, RONALD RIEGELHAUP, DAVID SPINNEY, JOSEPH LANZITO, JOHN OHK, PATRICK SHANNON, SR. and PATRICK SHANNON, JR., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |

JAMES K. JEDYNAK; B. GAIL HOWARD;           )
UNIFIED WORLDWIDE TRANSPORT, LLC;           )
KKJ HOLDINGS, LLC; KKJ HOLDINGS II, INC.;   )
KKJ HOLDINGS, III, LLC; KKJ HOLDINGS IV,    )
LLC; ASSET PROTECTION, INC.; UNLIMITED      )
OPTIONS, INC.; PROSPEROUS ENDEAVORS         )
LIMITED PARTNERSHIP; PACIFIC COAST          )
HOLDING GROUP, LLC; GREG KITTER; and        )
WENDY JEDYNAK,                              )
                                            )
                         Defendants.        )

## COMPLAINT FOR SECURITIES FRAUD

Plaintiffs, BRIAN A. KING, JANICE MIGON, ROSA AND TONY PEREZ, ANDREW

BENNETT, LAWRENCE LIEBOVICH, RONALD RIEGELHAUP, DAVID SPINNEY,

JOSEPH LANZITO, JOHN OHK, PATRICK SHANNON, SR. and PATRICK SHANNON, JR.,

("Plaintiffs") by and through their attorneys, for their Complaint against the above-named

defendants allege as follows:

### NATURE OF THE ACTION

1.      This is an action for violations of Section 10(b) of the Securities Exchange Act of

1934 [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R.   §240.10b-5]; Illinois

Securities Law of 1953, as amended, [815 ILCS § 5/1 *et seq.*] (the "Illinois Securities Act"), the

California Securities Act, [Cal. Corp. Code §2500 *et seq.*], common law fraud; and the Illinois

Fraudulent Conveyance Act [740 ILCS 160/5(a)].  All of Plaintiffs' claims arise out of Plaintiffs'

investments in Unified Worldwide Transport, LLC ("UWT"), which Defendants procured

through a scheme to defraud Plaintiffs and other investors.

2. Defendants' scheme consisted of several interrelated courses of conduct.  First,

Defendants duped Plaintiffs into purchasing UWT membership interests (hereinafter, "UWT

Securities") through a campaign of false and misleading statements and material omissions in

written offering materials ("Offering Documents") and oral representations.  Second, Defendants diverted a substantial portion of Plaintiffs' investment proceeds to their own personal use, instead of transmitting those proceeds to UWT as they were obligated.  Finally, Defendants concealed their fraud by misrepresenting UWT's true financial condition to its investors.  All told, Defendants absconded with over five million dollars ($5,000,000) of Plaintiffs' investment proceeds.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this action pursuant to Section 10(b) of the Securities Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] and the principals of pendent and ancillary jurisdiction.

4.  Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts or transactions constituting the violations occurred in this District.

## PLAINTIFFS

5.     Brian A. King is an individual residing in the Northern District of Illinois who purchased UWT Securities in the principal amount of $300,000.

6.     Janice Migon, is an individual residing in the Northern District of Illinois who purchased UWT Securities in the principal amount of $200,000.

7.     Rosa and Tony Perez, are individuals residing in the Northern District of Illinois who purchased UWT Securities in the principal amount of $100,000.

8.     Andrew Bennett is an individual residing in the Northern District of Illinois who purchased UWT Securities in the principal amount of $100,000.

9. Larry J. Liebovich is an individual residing in the Northern District of Illinois and the trustee of the Larry J. Liebovich Living Trust. The trust  purchased UWT Securities in the principal amount of $250,000.

10. Ronald Riegelhaup is an individual residing in the Northern District of Illinois who purchased UWT Securities in the principal amount of $100,000.

11. David A. Spinney is an individual residing in the Northern District of Illinois who purchased UWT Securities in the principal amount of $700,000.

12. Joseph Lanzito is an individual residing in the Northern District of Illinois who purchased UWT Securities in the principal amount of $440,000.

13. John Ohk is an individual residing in the Northern District of Illinois who purchased UWT Securities in the principal amount of $250,000.

14. Patrick Shannon, Sr. is an individual residing in the Northern District of Illinois who purchased UWT Securities in the principal amount of $1,650,000.

15. Patrick Shannon, Jr. is an individual residing in the Northern District of Illinois who purchased UWT Securities in the principal amount of $1,350,000.

**DEFENDANTS**

16. James Jedynak ("Jedynak") resides in the Northern District of Illinois and sold membership interests in UWT directly to Plaintiffs in Illinois. Jedynak was employed with UWT during the relevant time period, and his responsibilities with UWT included the sale of UWT Securities. UWT therefore expressly authorized Jedynak as its agent for the purpose of selling UWT Securities and collecting investment proceeds. Jedynak held himself out as UWT's agent for these purposes, and directed investors to issue checks to the below-referenced entities (which Jedynak owned or controlled) in consideration for UWT Securities. Jedynak is the husband of Defendant Wendy Jedynak and the brother-in-law of Defendant Greg Kitter.  On

4

information and belief, Jedynak is the managing member of KKJ Holdings, LLC ("KKJ-I"), the

president of Defendant, KKJ Holdings II, Inc. ("KKJ-II"), the manager of KKJ Holdings, III,

L.L.C. ("KKJ-III"), the manager of KKJ Holdings, IV, L.L.C. ("KKJ-IV"), the president of

Asset Protection, Inc. ("Asset Protection"), the managing member of Pacific Coast Holdings

Group, L.L.C. ("PCHG") and the secretary/treasurer of Unlimited Options, Inc.  ("Unlimited

Options").  These entities appear to have been formed by Jedynak to obtain, transfer and conceal

the funds that he received from Plaintiffs and other UWT investors by misrepresenting to the

investors that KKJ would forward the money to UWT.  The forgoing entities with the exception

of UWT are collectively referred to as the "Jedynak Entities."

17.    B. Gail Howard ("Howard") resides in California.  Howard, together with

Jedynak and Elipas made representations to Plaintiffs that UWT was profitable, had valuable

customers and that it was meeting all of its financial projections for tremendous growth in

revenue and profit margins.  **[B. Gail Howard filed chapter 11 bankruptcy proceedings.  She

is named in this complaint to preserve the claims against her in the event that the

automatic stay is lifted and the case against her is reinstated.]**

18.    Gregg Kitter ("Kitter") is the brother-in-law of Jedynak and the brother of Wendy

Jedynak.  Kitter worked for and assisted Jedynak in the sale of UWT Securities to Plaintiffs and

other UWT investors.  Sometime prior to January 1, 2006, Kitter was or became the Chief

Financial Officer of UWT and Plaintiffs are informed and believe that Kitter was involved in the

preparation of false projections; prepared, compiled and disseminated phony financial

statements; and assisted Jedynak and Howard in concealing the fact that UWT's operations were

a mere fraction of what Defendants represented to Plaintiffs.

19.     Wendy Jedynak is the wife of Jedynak.  On information and belief, Wendy
Jedynak is the owner and principal officer of nearly all the Jedynak Entities; she is the managing
member of KKJ-I; secretary of KKJ-II; managing member of KKJ-III; managing member of
KKJ-IV; secretary, and on information and belief, a shareholder of Asset Protection; the
president of Unlimited Options; and the general partner of Prosperous Endeavors Limited
Partnership.  Jedynak transferred assets to Wendy Jedynak and to the Jedynak Entities which
Wendy Jedynak owned in an effort to put them out of the reach of his creditors that would
inevitably arise from Jedynak's fraudulent activities described below.

20.     Unified Worldwide Transport, LLC ("UWT") is a California limited liability
company whose membership interest were sold to Plaintiffs and other investors by Howard,
Jedynak and Elipas.  **[UWT filed chapter 11 bankruptcy proceedings.  It is named in this
complaint to preserve the claims against it in the event that the automatic stay is dissolved
and the case against it is reinstated.]**

21.     On information and belief, the Jedynak Entities were structured as follows:  KKJ-
I was formed on July 30, 2003 in Nevada with reportedly no capital.  KKJ-II was formed on
March 24, 2003 in Nevada with a reported capital of $1,000 and dissolved on February 2, 2006.
KKJ-III was formed on March 24, 2004 in Nevada with reported capital of $-0- and was in a
default status as of April 1, 2007.  KKJ-IV was formed on February 17, 2005 in Nevada with
reported capital of $-0- and was in a default status as of March 1, 2007.  Asset Protection is and
Illinois corporation formed in 1995 and is in good standing.  PCHG was formed in Nevada on
August 5, 2004 with a reported capital of $-0- and was active as of April 16, 2006.  Unlimited
Options was formed in Nevada on October 23, 2000 with a reported capital of $1,000 and was
revoked on November 1, 2004.  Prosperous Endeavors was formed on November 19, 20000 in

Nevada with a reported capital of $-0- and was in default as of December 1, 2006. Jedynak took proceeds from his fraudulent membership sales in UWT and transferred them to various Jedynak Entities.

PLAINTIFFS' PURCHASES OF SECURITIES

22.     Brian A. King purchased UWT Securities on or about January 3, 2005 in the principal amount of $100,000 by issuing a check to UWT.  Dr. King purchased additional UWT Securities on or about April 23, 2005 in the principal amount of $200,000.  Notably, Dr. King issued the April 23, 2005 check in the amount of $200,000 to KKJ LLC (one of Jedynak's companies) based on a letter Howard sent to King confirming that Jedynak was UWT's "agent for the collection of certain funds in consideration for equity units in UWT LLC."  (Other investors also transmitted investment proceeds to KKJ based on this representation and similar representations by Howard.)

23.     Janice Migon purchased UWT Securities on or about January 20, 2005 in the principal amount of $100,000 by issuing a check to KKJ Holdings, LLC.  Migon purchased additional UWT Securities on or about April 25, 2005 in the principal amount of $100,000 by issuing a check to KKJ Holdings, LLC.

24.     Rosa and Tony Perez purchased UWT Securities in the principal amount of $100,000 on or about January 19, 2005 by issuing a check to UWT.

25.     Andrew Bennett purchased UWT Securities in UWT for $100,000 on or about January 11, 2005 by issuing a check to KKJ Holdings, LLC.

26.     Larry J. Liebovich purchased UWT Securities as trustee for the Larry J. Liebovich Living Trust on or about December 7, 2004 in the principal amount of $250,000 by issuing a check to UWT.

27.     Ronald Riegelhaup purchased UWT Securities on or about January 19, 2005 in the principal amount of $100,000 by issuing a check to UWT.

28.     David Spinney purchased UWT Securities on or about August 24, 2005 in the principal amount of $700,000 by issuing a check to KKJ Holdings LLC.

29.     Joseph Lanzito purchased UWT Securities on or about December 7, 2004 in the principal amount of $337,500 by issuing a check to UWT.   Lanzito purchased additional UWT securities on April 20, 2005 in the principal amount of $100,000 by issuing a check to KKJ Holdings.

30.     John Ohk purchased UWT securities in or about December of 2004, in the principal amount of $250,000, by issuing a check to UWT.

31.     Patrick Shannon, Sr. purchased UWT Securities in or about October and November, 2005 in the principal amount of $1,650,000..

32.     Patrick Shannon, Jr. purchased UWT Securities in or about October, 2005 in the principal amount of $1,350,00 .

## DR. JAMES ELIPAS' ROLE IN THE SALES PROCESS

33.     Several of the Plaintiffs are acquaintances and/or colleagues of Elipas.

34.     In or about November 2003, Jedynak approached Elipas with a proposed investment opportunity in UWT.  Jedynak represented to Elipas that UWT was beginning to explode with growth and earning in the telecommunications business.

35.     Based on Jedynak's recommendation, Elipas expressed interest in investing in UWT.  Elipas ultimately purchased in excess of $1.3 million in UWT Securities.

36.     Most of the Plaintiffs herein first became aware of a potential investment opportunity in UWT through Elipas.

37.     Elipas communicated with a number of potential investors, including Plaintiffs, for the purpose of inducing them to purchase UWT Securities.  In those communications Elipas touted UWT's existing profitability, its prospects for future revenue and its management team.

38.     At all relevant times, Elipas acted as Jedynak's, Howard's and UWT's agent for the purpose of procuring investments in UWT.

39.     In his capacity as agent for Jedynak, Howard and UWT, Elipas reiterated the above-referenced misrepresentations Jedynak and Howard made to Elipas, as well as other misrepresentations about UWT.  Specifically, Elipas made the following representations to Dr. King:

    a.  Howard sold prior company for several hundred million dollars and would replicate her prior success at UWT;

    b.  Howard had cultivated close relationships with the CEO's of major telecommunications companies and would use those relationships to UWT's advantage; Elipas specifically touted Howard's close relationship with the CEO of AT&T and represented that Howard could "pick up the phone" and contact AT&T's CEO at her whim and AT&T's CEO would take her call;

    c.  The investment in UWT would produce a tenfold return and UWT would be sold in the short term for between $500 and $1 billion.

    d.  UWT owned $1 million in infrastructure internationally and Howard routinely travelled internationally to cultivate UWT's relationships with foreign governments.

    e.  Throughout the life of Plaintiffs' investment in UWT, Elipas advised King that UWT was doing well.

40.     Elipas reiterated some or all of these representations to each Plaintiff.

41.     At all relevant times, Elipas served as an intermediary between Plaintiffs on the one hand, and Jedynak, Howard and UWT on the other.

42.     After confirming commitments from Plaintiffs, Elipas acted as an intermediary between Plaintiffs and Jedynak/Howard/UWT for the purpose of effecting the sale of UWT

Securities and keeping Plaintiffs apprised of developments at UWT.  Elipas not only induced

Plaintiffs to purchase UWT Securities, but throughout the life of Plaintiffs' investment Elipas

routinely relayed information about UWT from Jedynak, Howard and UWT to Plaintiffs.  During

that time period, Elipas represented to Plaintiffs that UWT was doing well, was meeting its

projections and was profitable.

43.     On July 7, 2006 Elipas became a Series 7 registered representative.

## DEFENDANTS' SCHEME TO DEFRAUD

44.     Howard, Jedynak, Kitter and UWT have perpetrated a massive fraud on Plaintiffs

and other UWT investors whereby Defendants: (i) fraudulently induced Plaintiffs to purchase

UWT Securities through a series of material misrepresentations and omissions, (ii) diverted a

substantial portion of the investment proceeds for their own personal use, and (iii) concealed

their fraud by reassuring Plaintiffs that UWT was in excellent financial health and was poised to

be purchased  for anywhere from $500 million to $1 billion in the near future.   Defendants'

scheme is set forth in detail below.

### DEFENDANTS' MATERIAL MISREPRESENTATIONS AND OMISSIONS

A.     <u>The Offering Documents</u>

45.     As a means to induce Plaintiffs to invest in UWT, Defendants created the

Offering Documents and, provided those documents to Plaintiffs.

46.     Elipas provided the Offering Documents to Plaintiffs Brian King, Janice Migon

and others.

47.     Jedynak and/or Howard provided the Offering Documents to John Ohk, David

Spinney, R. Andrew Bennet, and others.

48.     The Offering Documents consist of:  (i) profit and loss statements containing

actual data for the period January – September 2004 and projected data for the period October

2004 through December 2005; (ii) a confidential UWT powerpoint presentation; (iii) A

November 19, 2004 letter from Gail Howard to potential UWT investors; and (iv) the Amended

and Restated Operating Agreement of Unified Worldwide Transport, LLC.

49.      In purchasing the UWT Securities as described herein, Plaintiffs reasonably relied

upon the Offering Documents as alleged herein.

50.      Plaintiffs would not have purchased the UWT Securities in the absence of these

materially false and misleading documents.  Had Defendants disclosed the true facts about UWT,

Plaintiffs would not have purchased the UWT Securities.

51.      The Offering Documents contained the following false and misleading

representations:

     a.      "Since its inception, UWT has experienced consistent revenue growth."

     b.      "The company achieved profitability in only its 10th month of operation."

     c.      "The liquidity of UWT's balance sheet provides the company with a distinct competitive advantage."

     d.      "UWT has contracts with over 40 carrier customers, including such Tier 1 carriers as AT&T, Sprint, Global Crossing, MCI, Telmex, Swissfone, Telecom Italia, TeleDenmark, KPN, Singtel, IDT, and ITXC."

     e.      "Based on current customer contracts and heated demand from the expanding world market, UWT projects that by year-end 2004 it will ramp up from transporting August's 13.2 million minutes to 30+ million minutes per month, at an average gross profit of $.02 to $.03 per minute, using the infrastructure it already has in place."

     f.      "Ms. Howard is replicating her prior successful international telecom service business, NorthStar, which, as President/CEO, Ms. Howard sold in 2001 for a significant ROI."

     g.      "UWT's model has a lower cost structure than its competitors, while providing the capital resources and seasoned staff necessary to outperform them."

h.      "UWT transports traffic, operates its own POPs, or has licenses or contracts with vendors, carriers or governments in almost every part of the globe."

i.      "In September, 2004, UWT has over 150 vendors providing 250+ routes, 40 regular carrier customers (many Tier 1s), 5 POP locations with another being built, and 11 directs."

j.      "UWT has agreements with Mexico's three largest carriers – **Telmex, Avantel, Bestel** – and is currently running traffic." (emphasis in original)

k.      "UWT developed close ties to the **Paraguay** government, who notified UWT that it is being granted a direct license from CONATEL in October, 2004." (emphasis in original)

l.      "UWT already runs significant traffic to these regions, including Vietnam, China, and India, and has an interconnection license with powerhouse **Singtel (Singapore Telecom).**" (emphasis in original)

m.      "UWT already runs very profitable European "cellular" traffic, and has valuable direct interconnect licenses with **SwissFone** (Switzerland's PPT), **KPN, TeleDenmark, TelecomFrance, and Telecom Italia.**"   (emphasis in original)

n.      "UWT's projected ramp to 100 million minutes/month in 2005 transported on behalf of its carrier clients, will represent less than a 1% share of the total carrier market."

o.      "Major UWT Carrier Customers:   AT&T, Sprint, MCI, Global Crossing, Singapore Telecom, Telecom Italia, TeleDenmark, SwissFone (Switzerland PTT), KPN (Netherlands PTT), Telecom France, Telecom New Zealand, Telmex & Avantel (Mexico's two largest carriers), Limatel (Peru PTT), Nitel (Nigerian PTT), Asia Com, ITXC (world's largest VOIP carrier) IDT, Teleglobe."

p.      "Prior to UWT, Ms. Howard was President and CEO of Northstar, a $3 million startup, which in four years was sold for $340 million in 2001."

q.      The Offering Documents contained the following false and/or misleading bar graphs:





13



52.     In addition, the Offering Documents included profit and loss statements which contained false and misleading information.  Specifically, the profit and loss statements:

  a.  Inaccurately provided that UWT generated monthly operating income in excess of $1.2 million between April and September of 2004;

  b.  Fraudulently projected operating income for the fourth quarter of 2004 in excess of $1.3 million with no reasonable basis to do so;

  c.  Fraudulently projected operating income for 2005 in excess of $33 million with no reasonable basis to do so.

**B.** **The April 2005 Investor Meeting**

53.     Jedynak and Howard made additional material misrepresentations directly to Plaintiffs at an investor meeting which took place in the spring of 2005.

54.     Specifically, on April 9, 2005, Jedynak and Howard held a meeting in Illinois for UWT investors for the purpose of inducing them to purchase UWT Securities (the "April Investor Meeting").

14

55.     Dr. King, Janice Migon, Rosa and Tony Perez, John Ohk, R. Andrew Bennet, and others attended this meeting.

56.     During the course of the meeting, Howard and Jedynak reiterated the representations contained in the Offering Documents.  Specifically, Howard and Jedynak represented that:

> a.     UWT has experienced consistent revenue growth since its inception.
>
> b.     UWT achieved profitability in only its 10th month of operation.
>
> c.     The liquidity of UWT's balance sheet provides the company with a distinct competitive advantage.
>
> d.     UWT has contracts with over 40 carrier customers, including Tier 1 carriers.
>
> e.     Ms. Howard is replicating her prior successful international telecom service business, NorthStar, which, as President/CEO, Ms. Howard sold in 2001 for a significant ROI.
>
> f.     UWT's model has a lower cost structure than its competitors, while providing the capital resources and seasoned staff necessary to outperform them.
>
> g.     UWT transports traffic, operates its own POPs, or has licenses or contracts with vendors, carriers or governments in almost every part of the globe.
>
> h.     As of September, 2004, UWT had over 150 vendors providing 250+ routes, 40 regular carrier customers, and 5 POP locations.
>
> i.     UWT has agreements with Mexico's three largest carriers – Telmex, Avantel, Bestel – and is currently running traffic.
>
> j.     UWT developed close ties to the Paraguay government.
>
> k.     UWT already runs significant traffic to Vietnam, China, and India, and has an interconnection license with powerhouse Singtel (Singapore Telecom)."
>
> l.     UWT already runs very profitable European "cellular" traffic, and has valuable direct interconnect licenses with SwissFone (Switzerland's PPT), KPN, TeleDenmark, TelecomFrance, and Telecom Italia.
>
> m.     UWT's projected operating income for 2005 was in excess of $33 million.

57.     Each of these representations was false and was know by Howard and Jedynak to be false at the time they made the representations.

## C.  <u>Other Misrepresentations</u>

58.     Jedynak met with Plaintiff Spinney on two separate occasions in the weeks preceding his August 2005 investment in UWT.  First, Jedynak travelled to Spinney's office in Illinois in an attempt to induce him to invest in UWT.  Elipas was also present at that meeting.  During the meeting, Jedynak reiterated many of the above-stated misrepresentations and made multiple representations as to UWT's excellent financial health.

59.     Shortly after this meeting, Jedynak and Elipas traveled to Spinney's home to meet with Spinney and his wife.  Again, Jedynak reiterated the excellent financial health of UWT.

60.     In late August, 2005, Spinney met with Howard in her office in Santa Monica, California, and Howard touted UWT's excellent financial health.  Howard represented to Spinney that she would be able to sell UWT for $1 billion within a year.

## D.  <u>Material Omissions</u>

61.     In addition to the above-referenced false and misleading representations, Defendants failed to disclose material facts to Plaintiffs, as set forth below.

62.     The Offering Documents failed to disclose that some of the investors were purchasing UWT securities in the secondary market instead of directly from UWT.

63.     Defendants failed to disclose to Plaintiffs that investment proceeds paid to KKJ-1 would not be transmitted to UWT, but instead would be used for Howard's and Jedynak's personal benefit.

64.     Defendants failed to disclose to Plaintiffs UWT's financial instability.

65.     Defendants failed to disclose to Plaintiffs material information about UWT's customers, rendering the statements in the Offering Documents misleading.

66.     Defendants failed to disclose to Plaintiffs material information about the nature and scope of UWT's contracts with its customers.

67.     Defendants failed to disclose to Plaintiffs material information about Howard's purported close relationship with senior executives of existing and potential customers.

68.     Defendants failed to disclose material information about the demand for UWT's services.

69.     Defendants failed to disclose material information about the projections contained in the Offering Documents.

70.     Defendants failed to disclose material information relating to the oral representations Jedynak and Howard made concerning projections about UWT's revenues and market value.

### JENYNAK'S AND HOWARD'S MISAPPROPRIATION
### OF INVESTMENT PROCEEDS FOR THEIR PERSONAL USE

71.     Plaintiffs are informed and believe that Jedynak and Howard misdirected millions of dollars in investment proceeds transmitted to KKJ-1, and appropriated those investment proceeds for personal use.

72.     After an initial round of investments in which investors transmitted investment proceeds directly to UWT, Jedynak and Howard instructed Plaintiffs and other investors to transmit their investment proceeds to KKJ-I as UWT's agent.   To accomplish their misappropriation KKJ-I established a bank account at Harris Bank and Trust Company in Chicago, Illinois (the "Harris Account").

73.     Howard sent letters to investors and potential investors providing that Jedynak and KKJ-1, "have been authorized by UWT to accept funds on UWT's behalf from the sale of equity in UWT" and that "Upon receipt Mr. Jedynak and KKJ Holdings will then transfer such funds to UWT."

74.     Jedynak and KKJ-1, however, did not transfer a significant portion of the above-referenced investment proceeds to UWT as Jedynak and Howard represented.  Instead, on information and belief, KKJ-1 (through its managing member, Jedynak) transferred the money to Jedynak, to other bank accounts and brokerage accounts owned or controlled by Jedynak, and to third parties from whom Jedynak purchased assets for himself and his wife, Wendy Jedynak. KKJ-1 (again through Jedynak) also transferred millions of dollars directly to entities owned or controlled by Howard.

75.     Plaintiffs are informed and believe that the following transfers are examples of KKJ-1's Jedynak's and Howard's extensive misappropriation of UWT investment proceeds for their personal use:

> a)      On or about February 1, 2005 James K. Jedynak/KKJ-1 transferred $250,000 from the Harris Account to an account for Jedynak's benefit described as the Bear Stearns & Co., Inc./Magnet Fund L.P. which is unrelated to the business of UWT.

> b)      On or about April 23, 2005 KKJ-1/James K. Jedynak transferred $837,302.49 from the Harris Account to First Bank Northwest in connection with Jedynak's purchase of property for his benefit or his family's benefit in Idaho which was unrelated to the business of UWT.

> c)      On or about August 5, 2005 James K. Jedynak (in his capacity as managing member of KKJ-1) drew a check payable to himself for $900,000 on the Harris Account which he then deposited in his and Wendy Jedynak's personal bank account at North Shore Community Bank & Trust.

> d)      On or about October 10, 2005 James K. Jedynak (in his capacity as managing member of KKJ-1) drew a check payable to himself on the Harris

Account for $150,000 that he then deposited in his and Wendy Jedynak's account at North Shore Bank & Trust Company in Wilmette, Illinois.

e)      On or about February 15, 2006 James K. Jedynak (in his capacity as managing member of KKJ-1) transferred another $125,000 from the Harris Account to his and Wendy Jedynak's bank account at North Shore Community Bank & Trust.

f)      On or about October 29, 2005 James K. Jedynak (in his capacity as managing member of KKJ-1) drew a check payable to himself on the Harris Account for $400,000 stating that it was a loan to him from UWT.

g)      On or about February 15, 2006 James K. Jedynak (in his capacity as managing member of KKJ-1) drew a check on the Harris Account payable to himself for $125,000 which he then deposited in his bank account at North Shore Community Bank & Trust Company.

h)      On or about February 21, 2006 James K. Jedynak (in his capacity as managing member of KKJ-1) drew a check on the Harris Account payable to himself in the amount of $50,000 which he then deposited in another account of his at Harris Bank and Trust Company.

## DEFENDANTS' CONCEALMENT OF THEIR FRAUD

76.     Throughout 2005 and for the first quarter of 2006, UWT provided monthly income statements to certain investors which showed average monthly <u>profits</u> exceeding $1 million for the period April 2005 – March 2006.

77.     Plaintiffs were provided with this information either directly from UWT/Howard/Jedynak or through discussions with Elipas.

78.     This financial information was false and was known by Defendants to be false at the time they created the financial statements.  Defendants disseminated the false profit information as a means of concealing their scheme to defraud Plaintiffs and other UWT investors.

### JEDYNAK'S FRAUDULENT TRANSFERS

79.     Plaintiffs are informed and believe that Jedynak has and will transfer UWT assets out of the reach of Jedynak's and UWT's creditors.

80.     For example, on May 5, 2006 Jedynak transferred his interest in the real estate located at 2222 Bracken Lane, Northfield, Illinois to his wife, Wendy Jedynak.

81.     Similarly, on January 31, 2007, Jedynak quit claimed his interest in a property in Idaho to his wife, Wendy Jedynak.

82.     Both transfers appear to be without adequate consideration.

83.     Plaintiffs are informed and believe that Jedynak regularly travels internationally, and has the means and opportunity to transfer UWT assets out of the United States and out of the reach of UWT's and Jedynak's creditors.

### COUNT I

### Violations of Section 10(b) of the Securities Exchange
### Act of 1934 [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. §240.10b-5]

### (Against UWT, Howard, Jedynak, the Jedynak Entities and Kitter)

84.     Plaintiffs incorporate by reference and reallege each and every allegation above as if fully set forth herein.

85.     As set forth more fully above, defendants, namely, Jedynak, Howard, UWT, KKJ-I and Kitter, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or by the use of the mail, in connection with the purchase or sale of securities, have employed devices, schemes, or artifices to defraud, have make untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or have engaged in acts,

practices, or courses of business which operate or would operate as a fraud or deceit upon the plaintiffs.

86.     In particular, as more fully alleged above the Offering Documents contained false statements and omissions of material facts regarding UWT.

87.     Through the Offering Documents and oral misrepresentations, defendants Jedynak, Howard, UWT, KKJ-I and Kitter made the forgoing false statements and omissions with the knowledge and intent that Plaintiffs would rely thereon, be deceived thereby and to induce them to give Defendants in excess of $5 million for the purchase of UWT's membership interests.

88.     Plaintiffs reasonably and justifiably relied on the false statements and omissions contained in the Offering Documents and oral misrepresentations, tendered to Defendants in excess of $5 million for the purchase of membership interests in UWT, and as a direct and proximate result of said false statements and omissions, Plaintiffs have been damaged in excess of $5 million.

89.     Had Defendants, Jedynak, Howard, UWT, KKJ-I and Kitter, truthfully represented the facts of UWT and their intended use of Plaintiffs' investment at the time of the sales, Plaintiffs would not have purchased the membership interests of UWT and would not have given Defendants in excess of $5 million.

90.     Defendants, Jedynak, Kitter, Howard, UWT and KKJ-I, have concealed and continued to conceal their fraud from Plaintiffs and other investors of UWT.

91.     Plaintiffs are informed and believe that the Jedynak Entities were formed to avoid the claims of creditors of Jedynak that may arise out of the forgoing fraud.

92.     The Jedynak Entities are the alter ego or a mere conduit of Jedynak and the corporate veil should be pierced to impose to reach the assets and transfers of the entities to satisfy Plaintiffs' claims against Jedynak.

93.     Wendy Jedynak is the owner of some or all of the Jedynak Entities and is a necessary party to the piercing of the corporate veil since she stands as nominee owner of the Jedynak Entities which are the recipients of Defendants' ill-gotten gains.

94.     Plaintiffs are informed and believe that Wendy Jedynak received or used funds, that were raised from the sale of UWT membership interest to Plaintiffs and other UWT investors and that were deposited in accounts held by the Jedynak Entities, to purchase jewelry and other property for herself and Jedynak.

95.     Plaintiffs are informed and believe that the Jedynak Entities were (1) inadequately capitalized; (2) failed to issue stock; (3) failed to observe corporate formalities; (4) are insolvent; (5) do not have corporate records; (6) commingled funds with those of Jedynak, Wendy Jedynak and each other; (7) have diverted assets from the UWT and the plaintiffs; (8) have failed to maintain arm's-length relationship with each other; and (9) are a mere facade for Jedynak.

WHEREFORE, Plaintiffs pray as follows:

A.  For judgment in their favor and against Defendants, Jedynak, Howard, UWT, Kitter, and KKJ-I, jointly and severally, in the amount in excess of $5 million plus prejudgment interest;

B.  For an accounting of Defendants' use of Plaintiffs' funds and a constructive trust on all of Defendants' assets purchased with Plaintiffs' money;

C.  That the court pierce the corporate veil of KKJ-I and hold Wendy Jedynak, personally liable for an amount equal to any distributions that she received from KKJ-I or money she used from KKJ-I to purchase assets for herself;

D.  That the court pierce the corporate veil of the Jedynak Entities and enter judgment against them;

E.  For their costs of suit, including attorney's fees against Jedynak, Kitter, Howard, UWT and KKJ-I; and

F.  For such other relief as this court may deem proper.

## COUNT II

**Rescission Under Illinois Securities Act [815 ILCS § 5/1 *et seq.*]**

**(Against All Defendants)**

96.    Plaintiffs incorporate by reference and reallege each and every allegation above as if fully set forth herein.

97.    As alleged herein, Defendants offered and sold the UWT Securities in the State of Illinois and engaged in numerous activities in the State of Illinois in connection therewith.

98.    Plaintiffs purchased the UWT Securities in the State of Illinois.

99.    The UWT Securities are securities under the Illinois Securities Act.  815 ILCS § 5/2.1.

100.    UWT was the issuer of the UWT Securities under the Illinois Securities Act.  815 ILCS § 5/2.2.

101.    Howard was a "controlling person" within the meaning of Section 2.4 of the Illinois Securities Act.  815 ILCS § 5/2.4.  She was a member of UWT's executive committee and served as its President.  As such, she comprised part of the group of Defendants who acted in concert in the offer and sale of UWT Securities and directly or indirectly controlled the activities of UWT.

102.    Kitter was a "controlling person" within the meaning of Section 2.4 of the Illinois Securities Act.  815 ILCS § 5/2.4.  He was the Chief Financial Officer of UWT and Plaintiffs are informed and believe that Kitter was involved in the preparation of false projections and financial statements.  As such, Kitter comprised part of the group of Defendants who acted in

concert to in the offer and sale of UWT Securities and directly or indirectly controlled the activities of UWT.

103.     Jedynak was a "controlling person" within the meaning of Section 2.4 of the Illinois Securities Act.  815 ILCS § 5/2.4.  Plaintiffs believe that Jedynak was an employee of UWT.  Jedynak comprised part of the group of Defendants who acted in concert in the offer and sale of UWT Securities and directly or indirectly controlled the activities of UWT.

104.     The Illinois Securities Act applies to Plaintiffs' purchase of the UWT Securities.

105.     As more specifically alleged above, Defendants sold in excess of $5 million of UWT Securities to Plaintiffs.

106.     Defendants' sale of these securities to Plaintiffs violated Sections 12.F. through I. of the Illinois Securities Act.  815 ILCS § 5/12.F.-I.  By offering and selling the securities pursuant to the material representations and omissions alleged above, Defendants:

A.     engaged in a transaction, practice or course of business in connection with the sale of the UWT Securities which worked or tended to work a fraud or deceit upon Plaintiffs as the purchasers of the securities (815 ILCS § 5/12.F);

B.     obtained in excess of $ 5 million from Plaintiffs through the sale of the UWT Securities by means of untrue statements of material fact and/or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading (815 ILCS § 5/12.G);

C.     circulated written materials (i.e., the Offering Documents) pertaining to the UWT Securities knowing or having reasonable grounds to know that they contained material false or untrue representations (815 ILCS § 5/12.H.); and

D.     employed a device, scheme or artifice to defraud in connection with the sale of the UWT Securities to Plaintiffs, either directly or indirectly (815 ILCS § 5/12.I).

107.    The sale(s) of the UWT Securities to Plaintiffs in violation of the Illinois Securities Act are voidable at the election of Plaintiffs pursuant to Section 13.A. of the Illinois Securities Act.  815 ILCS § 5/13.

108.    In purchasing the UWT Securities as described herein, Plaintiffs reasonably relied upon the Offering Documents and other misrepresentations as alleged herein.

109.    Plaintiffs would not have purchased the UWT Securities in the absence of these materially false and misleading documents.  Had Defendants disclosed the true facts about UWT, Plaintiffs would not have purchased the UWT Securities.

110.    At the time Plaintiffs purchased the UWT Securities and subsequently until at least May 31, 2007, Plaintiffs had no knowledge that the sale(s) of UWT Securities to it were voidable by Plaintiffs at their election.

111.    In or about October and November, 2007 Plaintiffs sent written notice to Defendants Howard, Jedynak, the Jedynak Entities, Kitter and Elipas of their election to declare the sale of the UWT Securities to Plaintiffs void, and demanding repayment to Plaintiffs of their investment, together with interest from the date(s) of purchase as provided by the Illinois Securities Act (the "Notices").  Plaintiffs served the Notices by certified mail, return receipt requested, to each recipient's last known address with proper postage affixed.  Plaintiffs served these notices within six months of the date Plaintiffs learned that their purchases of UWT Securities were voidable.

112.    Plaintiffs did not learn that their purchases of UWT Securities were voidable until after May 31, 2007.  Moreover, Plaintiffs did not learn of the facts underlying their right to rescind their purchases of UWT Securities until after May 31, 2007.

113.    This Complaint also provides notice to Defendants of Plaintiffs' election to seek rescission pursuant to the Illinois Securities Act.

114.    Defendants refuse and continue to refuse to accept Plaintiffs' tender of the UWT Securities and make the requested repayment to Plaintiffs.

115.    Plaintiffs stand ready, willing and able to tender the UWT Securities back to UWT or to the Court in exchange for the repayment of the approximate $5 million paid by Plaintiffs for the securities, together with interest at the rate of ten (10%) percent per annum from the date of those payments, plus costs and attorney fees and expenses, as the Court may order Defendants to pay.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment in its favor and against UWT:

A.  Awarding Plaintiffs the remedy of rescission and entering judgment in favor of Plaintiffs against Defendants in an amount in excess of $5 million, together with interest at the rate of ten (10%) percent per annum from the date of those payments;

B.  For their costs of suit, including attorney's fees against Jedynak, Kitter, Howard, UWT and KKJ-I; and

C.  For such other relief as this court may deem proper.

## COUNT III

**Rescission Under the California Corporate
Securities Law of 1968 [Cal. Corp. Code §25401/§25501]**

**(Against All Defendants)**

116.    Plaintiffs incorporate by reference and reallege each and every allegation above as if fully set forth herein.

117.    As alleged herein, Defendants offered and sold the UWT Securities from the State of California and engaged in numerous activities in the State of California in connection therewith.

118.    The subscription agreement Plaintiffs signed in connection with the purchase of UWT securities contains a provision providing that the subscription agreement will be governed by the laws of the State of California.

119.    The California Corporate Securities Law of 1968 thus applies to Plaintiffs' purchase of the UWT Securities.

120.    As more specifically alleged above, Defendants sold in excess of $5 million of UWT Securities to Plaintiffs.

121.    Defendants' sale of these securities to Plaintiffs violated Sections 25401 and 25501 because Defendants offered and sold the securities by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

122.    The sale(s) of the UWT Securities to Plaintiffs in violation of the California Corporate Securities Law of 1968 are voidable at the election of Plaintiffs pursuant to Section 25501.

123.    In purchasing the UWT Securities as described herein, Plaintiffs reasonably and justifiably relied upon the Offering Documents and other misrepresentations as alleged herein.

124.    Plaintiffs would not have purchased the UWT Securities in the absence of these materially false and misleading representations and material omissions.   Had Defendants disclosed the true facts about UWT, Plaintiffs would not have purchased the UWT Securities.

125.    At the time Plaintiffs purchased the UWT Securities and subsequently until at least May 31, 2007, Plaintiffs had no knowledge that the sale(s) of UWT Securities to it were voidable by Plaintiffs at their election.

126.    Defendants refuse and continue to refuse to accept Plaintiffs' tender of the UWT Securities and make the requested repayment to Plaintiffs.

127.    Plaintiffs stand ready, willing and able to tender the UWT Securities back to Defendants or to the Court in exchange for the repayment of the approximate $5 million paid by Plaintiffs for the securities, together with interest at the rate of ten (10%) percent per annum from the date of those payments, plus costs and attorney fees and expenses, as the Court may order Defendants to pay.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment in its favor and against UWT:

A.  Awarding Plaintiffs the remedy of rescission and entering judgment in favor of Plaintiffs against Defendants in an amount in excess of $5 million, together with interest at the rate of ten (10%) percent per annum from the date of those payments;

B.  For their costs of suit, including attorney's fees against Jedynak, Kitter, Howard, UWT and KKJ-I; and

C.  For such other relief as this court may deem proper.

## COUNT IV

### Common Law Fraud

### (Against All Defendants)

128.     Plaintiffs incorporate by reference and reallege each and every allegation above as if fully set forth herein.

129.     As heretofore alleged, Plaintiffs' purchased membership interests in UWT.

130.     Defendants, namely, Jedynak, Howard, UWT, KKJ-I and Kitter, procured Plaintiffs' purchases of the membership interests through a scheme to defraud as alleged above.

131.     Said representations were false; Defendants made the representations with knowledge of the falsity of the statements therein, or with reckless disregard as to their truth or falsity, with the intent that Plaintiffs should believe the same, and should rely and act thereon, and should be deceived and defrauded thereby.

132.     Plaintiffs believed and relied on the above-referenced misrepresentations, and, so believing and relying, were thereby induced to, and did pay the Defendants in excess of $5 million for the purchase of UWT Securities, which Plaintiffs would not have done had they known that the representations were false.

133.     Defendants have concealed and continue to conceal their fraud from Plaintiffs and other investors of UWT.

134.     As a result of the misrepresentations, Plaintiffs have been damaged in excess of $5 million.

135.     Defendants' conduct was willful and malicious and intended to injure Plaintiffs.

WHEREFORE, Plaintiffs pray as follows:

A.   For judgment in their favor and against Defendants, Jedynak, Howard, UWT, Kitter, and KKJ-I, jointly and severally, in an amount in excess of $5 million plus prejudgment interest;

B.  For an accounting of Defendants' use of Plaintiffs' funds and a constructive
trust on all of the defendants' assets purchased with the plaintiffs' money;

C.  That the court pierce the corporate veil of KKJ-I and hold Wendy Jedynak,
personally liable for an amount equal to any distributions that she received
from KKJ-I or money she used from KKJ-I to purchase assets for herself;

D.  That the court pierce the corporate veil of the Jedynak Entities and enter
judgment against them;

E.  For their costs of suit, including attorney's fees against Jedynak, Kitter,
Howard, UWT and KKJ-I;

F.  For such other relief as this court may deem proper.

## COUNT V

**Violations of the Illinois Uniform Fraudulent Transfer Act [740 ILCS 160/5(a)]**

**(Against Jedynak, Wendy Jedynak and the Jedynak Entities)**

136.    Plaintiffs incorporate by reference and reallege each and every allegation above as

if fully set forth herein.

137.    At all relevant times Plaintiffs were "creditors" holding "claims" against each of

the Defendants by reason of the Defendants' wrongful and fraudulent conduct against them as

such terms "creditor" and "claims" are defined in the Illinois Uniform Fraudulent Transfer Act

("UFTA").

138.    At all relevant times UWT, Howard, KKJ and Jedynak were debtors as the term

"debtor" is defined in the UFTA.

139.    Plaintiffs are informed and belief that Jedynak transferred assets to Wendy

Jedynak, Kitter, the Jedynak Entities and to others unknown at this time with actual intent to

hinder, delay, or defraud his creditors; or, alternatively, that he made transfers to said persons

without receiving reasonably equivalent value in exchange for the transfer or obligation, and he

was engaged or was about to engage in a business or a transaction for which his remaining assets

were unreasonably small in relation to the business or transaction.  Included in such fraudulent

transfers heretofore alleged is Jedynak's transfer of his interest in the premises at 2222 Bracken Lane, Northfield, Illinois on May 5, 2006 and his transfer of real estate in Idaho on January 31, 2007.

140.    Wendy Jedynak was a participant in the fraudulent transfers of the Northfield residence and the Idaho property, and she had either actual knowledge of James Jedynak's fraudulent intent to transfer the property to avoid the claims of the people he defrauded, or knowledge of the facts and circumstances surrounding the transfer to excite the suspicions of a prudent person to be put on inquiry, or to lead a person of ordinary perception to infer fraud.

141.    Kitter was a participant in the fraudulent transfers in that he received money from Jedynak and the Jedynak Entities, and he had either actual knowledge of James Jedynak's fraudulent intent to transfer the property to avoid the claims of the people he defrauded, or knowledge of the facts and circumstances surrounding the transfer to excite the suspicions of a prudent person to be put on inquiry, or to lead a person of ordinary perception to infer fraud.

142.    Plaintiffs are informed and believe that Howard transferred assets to others unknown at this time with actual intent to hinder, delay, or defraud her creditors; or, alternatively, that she made transfers to said person without receiving reasonably equivalent value in exchange for the transfer or obligation, and she was engaged or was about to engage in a business or a transaction for which her remaining assets were unreasonable small in relation to the business or transaction.

WHEREFORE, Plaintiffs pray as follows:

A. For judgment in their favor and against Defendants, Jedynak, Howard, UWT, Kitter, and KKJ-I, jointly and severally, in an amount in excess of $5 million plus prejudgment interest;

B. For an accounting of Defendants' use of Plaintiffs' funds and a constructive trust on all of the defendants' assets purchased with the plaintiffs' money;

31

C.   That the court pierce the corporate veil of KKJ-I and hold Wendy Jedynak, personally liable for an amount equal to any distributions that she received from KKJ-I or money she used from KKJ-I to purchase assets for herself;

D.   That the court pierce the corporate veil of the Jedynak Entities and enter judgment against them;

E.   For their costs of suit, including attorney's fees against Jedynak, Kitter, Howard, UWT and KKJ-I;

F.   For such other relief as this court may deem proper.

Respectfully submitted,

Plaintiffs, BRIAN A. KING, JANICE MIGON, ROSA AND TONY PEREZ, ANDREW BENNETT, LAWRENCE LIEBOVICH, RONALD RIEGELHAUP, DAVID SPINNEY, JOSEPH LANZITO, JOHN OHK, PATRICK SHANNON, SR. and PATRICK SHANNON, JR.,

By:_____s/ James Kopecky_____
                    One of their attorneys

James L. Kopecky
James L. Kopecky, P.C.
321 N. Clark Street, Suite 2200
Chicago, IL  60610
Phone: (312) 527-3966
Fax: (312) 527-3968
ARDC #6225359

Daryl M. Schumacher
The Law Offices of Daryl M. Schumacher, P.C.
415 East Golf Road, Suite 111
Arlington Heights, IL  60005
Phone: (847) 545-1855
Fax:  (847) 553-4164
ARDC #6244815