**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DR. JAMES ELIPAS, *et al.*,          )
                                     )
            Plaintiffs,              )
                                     )
        v.                           )    No. 07 C 3026
                                     )
JAMES K. JEDYNAK, B. GAIL HOWARD,    )
SCOTT H. CUMMINGS, *et al.*,         )
                                     )
            Defendants.              )


<u>**MEMORANDUM OPINION**</u>

Before the court is the King Plaintiffs' motion for partial summary judgment against defendant Betty Gail Howard.[1] For the reasons explained below we grant their motion in part and deny it in part.

<u>**BACKGROUND**</u>

In a memorandum opinion dated March 26, 2010 we denied plaintiffs' motion for summary judgment against Howard's co-defendant, Scott Cummings. <u>See</u> <u>Elipas v. Jedynak</u>, No. 07 C 3026, 2010 WL 1286795 (N.D. Ill. Mar. 26, 2010). We will assume that the reader is familiar with the background facts described in that

---

[1] The "King Plaintiffs" consist of plaintiffs Brian A. King, Janice Migon, Rosa and Tony Perez, Andrew Bennett, the Larry J. Liebovich Living Trust, Ronald Riegelhaupt, David Spinney, Joseph Lanzito, John Ohk, Adam and Dina Skinner, P&P Holdings, Inc., and Claddagh Holdings, Inc. We invited the King Plaintiffs and the other group of plaintiffs in this case, the "Elipas Plaintiffs," to file joint summary judgment materials. But only the King Plaintiffs have moved for summary judgment.

opinion. With a few exceptions plaintiffs have relied on the same documents and testimony to support their motions against both Cummings and Howard. But Howard, unlike Cummings, directly solicited the plaintiffs' investments in Unified Worldwide Transport, LLC ("UWT") and benefitted personally when her co-defendant James Jedynak misappropriated the proceeds of those investments. (Pls.' L.R. 56.1 Stmt. (hereinafter, "Pls.' Stmt.") ¶¶ 24-28, 40-41.) Howard, who has invoked her Fifth Amendment privilege against self-incrimination, has not responded to plaintiffs' motion. We therefore deem admitted any properly supported facts set forth in plaintiffs' Local Rule 56.1 statement. See L.R. 56.1(b)(3)(C); see also LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 391 (7th Cir. 1995). Those facts, which we described in detail in our prior opinion, "establish[] the factual basis from which [our] Rule 56 analysis will proceed." LaSalle Bank, 54 F.3d at 392.

## **DISCUSSION**

### A.   **Legal Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering such a motion, the court ordinarily construes the evidence and all inferences that reasonably can be

drawn therefrom in the light most favorable to the nonmoving party.
See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir.
1999).  We may, however, draw adverse inferences from Howard's
silence in the face of incriminating evidence.  See, e.g., SEC v.
Lyttle, 538 F.3d 601, 603-04 (7th Cir. 2008); SEC v. Colello, 139
F.3d 674, 678 (9th Cir. 1998).  The court will enter summary
judgment against a party who does not "come forward with evidence
that would reasonably permit the finder of fact to find in [its]
favor on a material question."  McGrath v. Gillis, 44 F.3d 567, 569
(7th Cir. 1995).

**B.    Rule 10b-5**

Plaintiffs contend that Howard violated Securities and
Exchange Commission Rule 10b-5, which makes it unlawful: "(a) To
employ any device, scheme, or artifice to defraud, (b) To make any
untrue statement of a material fact or to omit to state a material
fact necessary in order to make the statements made, in the light
of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which
operates or would operate as a fraud or deceit upon any person, in
connection with the purchase or sale of any security."  17 CFR §
240.10b-5.  They rely on misstatements that Howard made in
correspondence to some of the plaintiffs and omissions concerning
UWT's "predecessor entities."  To prevail on their claim against
Howard the plaintiffs "must prove (1) a material misrepresentation

or omission by the defendant; (2) scienter; (3) a connection
between the misrepresentation or omission and the purchase or sale
of a security; (4) reliance upon the misrepresentation or omission;
(5) economic loss; and (6) loss causation." _Stoneridge Inv.
Partners, LLC v. Scientific-Atlanta_, 552 U.S. 148, 157 (2008).

### 1. Howard's Misrepresentations With Respect to Money Paid to KKJ Holdings

In letters to plaintiffs Andrew Bennett and Patrick Shannon
Howard stated that payments made to KKJ Holdings (defendant
Jedynak's company) for UWT securities would be transmitted "upon
receipt" to UWT. (Pls.' Stmt. ¶ 28.) Howard also sent letters to
Brian King, Joseph Lanzito, and Janice Migon stating that Jedynak
was authorized to collect funds "on behalf of UWT LLC."[2] All five
plaintiffs wrote checks payable to KKJ, or wired money to KKJ, to
purchase UWT securities.[3] None of that money was ever transferred
to UWT. (Pls.' Stmt. ¶ 31.)[4] Instead, Jedynak used the money for

---

[2] (See Letter from G. Howard to B. King dated April 19, 2005, attached as Ex. 50 to Pls.' Stmt.; Letter from G. Howard to J. Lanzito dated April 19, 2005, attached as Ex. 51 to Pls.' Stmt.; see also Letter from G. Howard to J. Migon dated April 19, 2005, attached as Ex. 12 to Cummings' L.R. 56.1 Stmt.)

[3] (See Decl. of B. King, attached as Ex. 1 to Pls.' Stmt.; Decl. of J. Migon, attached as Ex. 2 to Pls.' Stmt.; Decl. of A. Bennett, attached as Ex. 4 to Pls.' Stmt.; Decl. of J. Lanzito, attached as Ex. 8 to Pls.' Stmt.; Decl. of P. Shannon, attached as Ex. 11 to Pls.' Stmt.)

[4] Plaintiff David Spinney paid $700,000 to KKJ in exchange for UWT securities on September 24, 2005. (Decl. of D. Spinney, attached as Ex. 7 to Pls.' Stmt.) Plaintiffs have not cited any evidence tying Mr. Spinney's payment to any misstatement by Howard about the ultimate recipient of those funds. This evidence is critical because, as we noted in our earlier opinion, it appears that KKJ was reselling UWT equity on the secondary market. If the defendants disclosed that fact, then there would be no fraud (at least not on the theory that the plaintiffs are pursuing in their motion). Even drawing an adverse inference from the defendants' silence, we do not believe that the mere fact of

personal expenses and other, unrelated investments. (Pls.' Stmt. ¶¶ 33-39.) And on at least one occasion Jedynak transferred funds intended for UWT to Howard and an entity that she controlled. (<u>Id.</u> at ¶ 41.)

### a. Materiality

"[A]n omission or misstatement is material under Rule 10b-5 if it is substantially likely that a reasonable investor would have viewed the omitted or misstated fact as significantly altering the total mix of information made available." <u>Rowe v. Maremont Corp.</u>, 850 F.2d 1226, 1233 (7th Cir. 1988) (citations and internal quotation marks omitted). "Only if the established omissions [or misstatements] are so obviously important to an investor that reasonable minds cannot differ on the question of materiality is the ultimate issue of materiality appropriately resolved as a matter of law by summary judgment." <u>TSC Industries, Inc. v. Northway, Inc.</u>, 426 U.S. 438, 450 (1976) (citations and internal quotation marks omitted). Howard led the plaintiffs to believe that they were investing directly in UWT, a self-described start-up company, not purchasing equity in the company on the secondary market. A reasonable investor would consider it important that his or her investment would be used for the personal expenses and

---

a payment to KKJ is proof of fraud. <u>Cf.</u> <u>Cho v. Holland</u>, No. 04 C 5227, 2006 WL 2859453, *8 (N.D. Ill. Oct. 3, 2006) ("The appellants' invocation of the Fifth Amendment, even when combined with the evidence above, is insufficient to establish that they received the funds relating to these five checks.").

investments of the company's agents, (Pls.' Stmt. ¶¶ 33-34, 41), and not to fund the company's operations. We conclude that Howard's misrepresentations were material.

### b. Scienter

To be held liable under Rule 10b-5 Howard must have made the misrepresentations with the "intent to deceive, demonstrated by knowledge of the statement[s]' falsity or reckless disregard of a substantial risk that the statement[s] [were] false." Higginbotham v. Baxter Intern., Inc., 495 F.3d 753, 757 (7th Cir. 2007). There is no direct evidence of Howard's state of mind, but we believe that the circumstantial evidence is more than sufficient in this case. See Lyttle, 538 F.3d at 604 ("Even when a party's subjective beliefs are critical to liability, it is not always true that the case cannot be decided on summary judgment."). On November 16, 2004 Howard told Patrick Shannon, a principal of plaintiff P&P Holdings, Inc., that KKJ was authorized to collect money on UWT's behalf and that KKJ would transfer P&P Holdings' investment to UWT "upon receipt." (See Letter from G. Howard to P. Shannon dated Nov. 16, 2004, attached as Ex. 34 to Pls.' Stmt.) Shannon, on behalf of P&P Holdings, wired $1,350,000 to KKJ Holdings' bank account on November 23, 2004. (Aff. of Patrick Shannon, Jr., attached as Ex. 11 to Pls.' Stmt., ¶ 5.) That very day Jedynak wired $675,000 from that account to Howard and an entity that she

controlled. (Pls.' Stmt. ¶ 28.)[5] This sequence of events does not completely rule out the possibility that Jedynak was paying a legitimate debt and that Howard did not know whose money he was using. But that possibility seems extremely remote when one considers that none of the money paid to KKJ was ever transferred to UWT. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). As the President and CEO of a small company, personally involved in the company's fund-raising efforts, Howard certainly would have known that the proceeds of a large investment were missing. We may also consider the "inference (permissible in a civil case) of guilt" from her refusal to participate in this litigation on Fifth Amendment grounds. See Lyttle, 538 F.3d at 604. After this transaction plaintiffs Bennett, King, Lanzito, and Migon sent checks to KKJ after Howard reassured them that KKJ was authorized to collect funds "on behalf of UWT," implying that the money would be transmitted to UWT (or at least used for its benefit). Howard made these later representations with at least reckless disregard for their truth or

---

[5]  The account balance was approximately $7,000 when Shannon wired the money into the account, so any commingling with other funds was relatively minor. (See Harris Trust & Savings Bank Acct. Records, attached as Ex. 35, at Bates 006.)

falsity.  No reasonable jury could conclude that Howard acted without the required state of mind.

### c.  Connection to the Sale of Securities

The Supreme Court has broadly interpreted the phrase "in connection with" in Rule 10b-5.  <u>See</u> <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit</u>, 547 U.S. 71, 85 (2006); <u>SEC v. Zandford</u>, 535 U.S. 813, 819-20 (2002).  "It is enough that the scheme to defraud and the sale of securities coincide."  <u>Zandford</u>, 535 U.S. at 822. Here the connection is straightforward: Howard's statements misled plaintiffs to believe that the proceeds of their investments would be transmitted to UWT.  We conclude that her statements were made "in connection with" the sale of securities.

### d.  Reliance and "Transaction Causation"

Reliance and transaction causation are related but distinct requirements.  <u>See</u> Thomas Lee Hazen, 4 The Law of Securities Regulation § 12.11 (6th Ed. 2009); <u>cf.</u> <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 341-42 (2005) (noting that "reliance" and "transaction causation" are sometimes used interchangeably in cases (unlike this one) involving publically-traded securities).  We conclude that the five plaintiffs who received letters from Howard directing them to pay KKJ for UWT securities actually relied on her misrepresentations.  This leaves those plaintiffs who paid UWT directly for their securities.  There is no evidence that these plaintiffs relied on misrepresentations that Howard made to other

investors, and plaintiffs have not identified any other theory of reliance that would entitle them to relief under Rule 10b-5. <u>See, e.g.</u>, <u>Hintz v. Prudential Ins. Co. of America</u>, No. 08-CV-1444, 2009 WL 3156741, *27 (N.D. Ill. Sept. 28, 2009) (denying summary judgment where the moving party did not meaningfully develop its supporting arguments). Insofar as those plaintiffs claim relief under Rule 10b-5 for misrepresentations directed to other investors, they have not satisfied a necessary element of their claim. <u>See</u> <u>Levine v. Prudential Bache Properties, Inc.</u>, 855 F.Supp. 924, 933 (N.D. Ill. 1994) (dismissing a Rule 10b-5 claim where the plaintiffs failed to allege either actual reliance or "fraud-on-the-market").[6]

To show transaction causation the plaintiff must provide "proof that a knowledgeable investor would not have made the investment in question, had she known all the facts." <u>Ray v. Citigroup Global Markets, Inc.</u>, 482 F.3d 991, 995 (7th Cir. 2007). We have already concluded that Howard's misrepresentations were material. UWT needed capital just to get off the ground, and based on Howard's representations the plaintiffs believed that they were doing just that. Instead, they were only enriching Howard and Jedynak. We do not believe that a knowledgeable investor would have gone ahead with the transaction under these circumstances.

### e. Economic Loss & Loss Causation

---

[6] This does not necessarily rule out liability for the same conduct premised on some other legal theory. But plaintiffs request summary judgment only on their state and federal securities law claims.

UWT filed for bankruptcy in June 2007, at which point plaintiffs' interests in UWT were worthless. (Pls.' Mem. at 8.) Prior to the company's bankruptcy several plaintiffs received small distributions, others received no return at all on their investment. We conclude that plaintiffs have shown economic loss. If the facts had been as Howard and Jedynak had represented in 2004 and 2005 — that is, if they had transmitted the funds to UWT — would the plaintiffs have suffered a loss? See LHLC Corp. v. Cluett, Peabody & Co., Inc., 842 F.2d 928, 931 (7th Cir. 1988) ("'Loss causation' means that the investor would not have suffered a loss if the facts were what he believed them to be."). We think it is clear that Howard's and Jedynak's fraud, which diverted a substantial amount of money away from a new business that was already saddled with debt, was a substantial factor. See Miller v. Asensio & Co., Inc., 364 F.3d 223, 231-32 (4th Cir. 2004) (a plaintiff proves Rule 10b-5 liability by showing that the defendant's fraud was a substantial cause of plaintiff's losses, even if it was not the sole cause); see also Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 649 (7th Cir. 1997) (a plaintiff may adequately plead loss causation without alleging "that all of its loss can be attributed to the false statement of the defendant"). As early as June 2006 the company was on the verge of insolvency. (See Pls.' Stmt. ¶ 56 (stating that Howard informed Cummings in June 2006 that "UWT desperately needed $100,000 just to stay in business.").)

Setting the appropriate amount of damages is a more difficult task.  The plaintiff ordinarily has the burden to prove damages.  See Harris Trust and Sav. Bank v. Ellis, 810 F.2d 700, 706 (7th Cir. 1987); see also Miller, 364 F.3d at 233; Robbins v. Koger Properties, Inc., 116 F.3d 1441, 1447 n.5 (11th Cir. 1997) ("[A]s long as the misrepresentation is one substantial cause of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement.  But in determining recoverable damages, these contributing forces must be isolated and removed.").  Howard's scheme with Jedynak and KKJ did not entirely deprive the company of funds: some investors (including some of the King Plaintiffs) paid UWT directly for equity in the company.  So, it is conceivable that other factors played a role in UWT's demise.  See Caremark, 113 F.3d at 649 ("[I]t is possible for more than one cause to affect the price of a security and, should the case survive to that point, a trier of fact can determine the damages attributable to the fraudulent conduct.").  But the record suggests only two other possible causes for UWT's financial problems: mismanagement (Cummings Dep. at 87) and embezzlement.  (Id. at 93 ("Q: It looks like [Howard] stole millions of dollars, doesn't it?  A: It sure does.  Because I don't know where the money went.").)  If there were other forces at play — i.e., legitimate business difficulties unrelated to fraud — Howard would be in the best position to address them.  She was the President and CEO of the company and was the driving force behind

the business from its inception.  Cummings, the only other member of UWT's executive committee, testified that he relied on her completely to run the business.  (See, e.g., id. at 93-94, 151.) Most of his deposition testimony about the company and its performance was based on information that Howard told him.  So, while our picture of UWT and its operations is incomplete, Howard is largely responsible for that fact.  See LaSalle Bank, 54 F.3d at 390 n.4 (noting that a party's decision to invoke the Fifth Amendment in civil litigation hinders the opposing party's ability to litigate the case).

Under the circumstances, we think that it is appropriate to shift the burden to Howard to show that other factors besides her fraud contributed to UWT's demise.  See Colello, 139 F.3d at 677-78; see also Lyttle, 538 F.3d at 604 (citing Colello with approval).  In Colello the SEC brought a civil claim against a "nominal defendant" to recover the proceeds of a fraud perpetrated by his co-defendants.  Colello, 139 F.3d at 675, 677.  A "nominal defendant" is a person (such as a trustee, agent, or depositary) who "holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute."  Id. at 676 (citation and internal quotation marks omitted).  "[I]n the typical case, the creditor plaintiff must show that the nominal defendant has received ill gotten gains and that he does not have a legitimate claim to those funds."  Id. at 677 (emphasis in original).  Colello was "atypical," however, because the nominal

defendant "consistently invoked his Fifth Amendment privilege not to testify." Id. In response the district court shifted the burden to the defendant to show that he had a legitimate claim to the funds. See SEC v. Cross Financial Services, Inc., 908 F.Supp. 718, 732 (C.D. Cal. 1995) (concluding that the defendant could not insist that he had a legitimate claim to the proceeds and at the same time refuse to provide information substantiating his claim). The Ninth Circuit affirmed, noting that "a district court has discretion in its response to a party's invocation of the Fifth." Id. at 677-78. In this case, Howard has chosen to ignore plaintiffs' motion entirely. Cf. Cho, 2006 WL 2859453, at *8 ("It is important to remember that appellants not only decided to invoke their Fifth Amendment privilege, but they also chose not to offer any other evidence to support their claim that these checks could have been for a valid business purpose."). Accordingly, there is no evidence in the record that would support a finding that some other factor besides Howard's fraud contributed to plaintiffs' losses. In the absence of such evidence, we conclude that Howard's fraud was the sole cause of plaintiffs' losses and we will award compensatory damages accordingly.

## 2. Howard's Omissions with Respect to UWT's Predecessor Entities

As a separate basis for relief under Rule 10b-5 the plaintiffs contend that Howard omitted certain information concerning UWT's "predecessor entities." That argument remains relevant, despite

our ruling with respect to the fraudulently induced payments to KKJ, because some of the King Plaintiffs were not targets of that scheme. (See supra § B.1.d.) The substance of plaintiffs' claim against Howard for material omissions is identical to the claim that they levied against her co-defendant Scott Cummings. We discussed plaintiffs' claim in detail in our March 26, 2010 opinion and it is unnecessary to repeat that discussion here. See Elipas, 2010 WL 1286795, at *1-2, 6. For the reasons stated in that opinion we conclude that, as it concerns Howard's omissions, the plaintiffs have not shown that "reasonable minds cannot differ on the question of materiality." See TSC Industries, 426 U.S. at 450; see also id. (observing that the "objective facts" are just the starting point — the ultimate determination of materiality is "peculiarly" for the trier of fact). Accordingly, we deny their motion for summary judgment to the extent that it is predicated on Howard's omissions concerning UWT's predecessor entities.[7]

## C. Illinois Securities Act

Section 13 of the Illinois Securities Act provides that "[e]very sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser," provided that appropriate notice is given "to each person from whom

---

[7] Plaintiffs also argue that Howard is liable as a control person under Section 20(a) of the Securities Act of 1934. It is unnecessary to address that contention because we have concluded that she is primarily liable for fraudulently inducing some of the King Plaintiffs to invest in UWT. And as to the remaining plaintiffs, they have not proven someone else's primary liability for which Howard may be derivatively liable as a controlling person. See, e.g., Roth v. OfficeMax, Inc., 527 F.Supp.2d 791, 806 (N.D. Ill. 2007) (control-person liability requires proof of a primary violation).

recovery will be sought." See 815 ILCS 5/13(A) & (B). We concluded in our March 26, 2010 opinion that the King Plaintiffs' evidence concerning notice was deficient as to Cummings. See Elipas, 2010 WL 1286795, at *4. It is also deficient as to Howard. Indeed, plaintiffs inexplicably rely on letters addressed to Cummings to establish notice with respect to Howard. (See Letters from D. Schumacher to S. Cummings, dated Feb. 26, 2008, attached as Ex. 47 to Pls.' Stmt.) The problem may corrected by an affidavit from the plaintiffs' attorney and/or the plaintiffs themselves indicating how and when they became aware that the transactions were voidable. See, e.g., Gowdy v. Richter, 314 N.E.2d 549, 556-57 (Ill. App. 1974) (concluding that notice of rescission was timely based upon the testimony of the plaintiff and his attorney).

As we discussed in our earlier opinion the elements of a claim under § 12(G) of the Illinois Securities Act mirror the elements of a Rule 10b-5 claim, with two important differences. First, the plaintiff is not required to prove scienter. Foster v. Alex, 572 N.E.2d 1242, 1245 (Ill. App. 1991). Second, the plaintiff is not required to prove loss causation. Lucas v. Downtown Greenville Investors L.P., 671 N.E.2d 389, 398-400 (Ill. App. 1996). Therefore, those plaintiffs who relied on Howard's misrepresentations and paid money to KKJ are entitled to rescission under § 12(G) (provided that they can satisfy the notice

requirement).[8]  Those plaintiffs who paid UWT directly for their securities are not entitled to summary judgment on their § 12(G) claim for the same reasons that we denied their Rule 10b-5 claim.

## **CONCLUSION**

The King Plaintiffs' motion for partial summary judgment (379) is granted in part and denied in part.  The motion is granted as to the Rule 10b-5 claims of plaintiffs Andrew Bennett, Patrick Shannon, Brian King, Joseph Lanzito, and Janice Migon.  Those same plaintiffs are given leave to submit affidavits substantiating their claim that they timely notified defendant Howard of their election to rescind pursuant to § 12(G) of the Illinois Securities Act.  All such affidavits, and any accompanying materials, shall be filed by May 5, 2010.  The motion is denied as to the claims of the remaining King Plaintiffs.


DATE:     April 20, 2010


ENTER:    _____

          John F. Grady, United States District Judge

---

[8]    Those plaintiffs are Andrew Bennett, Patrick Shannon, Brian King, Joseph Lanzito, and Janice Migon.  As we discussed earlier, plaintiff David Spinney has not established that he relied on any misstatements when he paid KKJ. (See *supra* n. 4.) The plaintiffs also request punitive damages, which are not available under Rule 10b-5.  Plaintiffs have not addressed whether they are available under the Illinois Securities Act, and they have not moved for summary judgment on any other count of their complaint.  Therefore any decision with respect to punitive damages would be premature at best.