IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. JAMES ELIPAS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07 C 3026 |
| | ) | |
| JAMES K. JEDYNAK, B. GAIL HOWARD, | ) | |
| SCOTT H. CUMMINGS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the court is counter-defendant James Elipas' motion for
summary judgment on counter-plaintiff Scott H. Cummings'
counterclaim for contribution. We grant Elipas' motion for the
reasons explained below.

## BACKGROUND

We will only briefly review the facts relevant to the current
motion, assuming that the reader is familiar with our earlier
opinions in this case. See Elipas v. Jedynak, No. 07 C 3026, 2010
WL 1286795 (N.D. Ill. Mar. 26, 2010)("Elipas I"); Elipas v.
Jedynak, No. 07 C 3026, 2010 WL 1611024 (N.D. Ill. Apr. 20, 2010)
("Elipas II"); Elipas v. Jedynak, No. 07 C 3026, 2011 WL 1706059
(N.D. Ill. May 5, 2011) ("Elipas III"). The two groups of
plaintiffs in this case — the "King Plaintiffs" and the "Elipas
Plaintiffs" — were investors in Unified Worldwide Transport, LLC

- 2 -

("UWT"). As we discussed at length in Elipas III, the materials that some of these investors received in connection with their investments contained false statements and material omissions. Elipas III, 2011 WL 1706059, *3-9. In addition, some plaintiffs were directed to pay a company controlled by defendant James Jedynak in exchange for their UWT securities. Despite assurances that the money would be transmitted to UWT, Jedynak and defendant Betty Gail Howard used the money for their own personal expenses and investments. See Elipas II, 2010 WL 1611024, *2. UWT declared bankruptcy in June 2007 and, except for a few small distributions, the money that the plaintiffs had invested was lost. Id. at *3. Howard and Jedynak have invoked their Fifth Amendment right against self-incrimination in response to this lawsuit. See Elipas II, 2010 WL 1611024, *2; Elipas III, 2011 WL 1706059, *3-9.[1] Cummings, a member (with Howard) of UWT's two-person Executive Committee, has defended this lawsuit pro se. In Elipas III, we held that Cummings is liable to some of the plaintiffs for recission as a controlling person under the Illinois Securities Law. Elipas III, 2011 WL 1706059, *12-14. Cummings' counterclaim seeks contribution from Elipas — himself an investor in UWT and a plaintiff in this case — for Elipas' role in soliciting investments from other investors.

---

[1] Jedynak appeared and defended this lawsuit for a period of time before invoking the privilege and settling with the plaintiffs. Elipas I, 2010 WL 1286795, *1. Howard has never meaningfully participated in this suit. Id. Both have been indicted for mail and wire fraud in connection with their role with UWT. See United State v. Howard, No. 10-CR-786 (N.D. Ill. 2010).

- 3 -

See Illinois Contribution Act, 740 ILCS 100/2(a). His counterclaim is based in large part on the King Plaintiffs' complaint, which describes Elipas' alleged role in the defendants' scheme without actually naming him as a defendant. (Am. Compl. ¶¶ 28-39.) The King Plaintiffs allege — and Cummings re-alleges — that Elipas induced the King Plaintiffs to invest in UWT by making false statements and omitting material information. (Id. at ¶¶ 35-36; Counterclaim ¶¶ 9-13.)

Although we have referred to the "King Plaintiffs" and the "Elipas Plaintiffs" for the sake of convenience, each plaintiff's claim stands or falls on its own. It follows, for purposes of Cummings' counterclaim, that Cummings must establish Elipas' potential liability for each individual plaintiff's injury. In opposition to Elipas' motion for summary judgment, Cummings relies chiefly on the deposition testimony of three plaintiffs: Brian King, David Spinney, and Janice Migon. His complaint alleges that other members of the King Plaintiffs received information from Elipas, (see id. at ¶ 11), but he has not cited any evidence substantiating that allegation. Accordingly, Elipas is entitled to summary judgment on Cummings' claim for contribution with respect to his liability (if any) to the other plaintiffs besides King, Spinney, and Migon. See Marion v. Radtke, 641 F.3d 874, 876-77 (7th Cir. 2011) ("When a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary

- 4 -

judgment need not produce evidence of its own."); see also Arnett v. Webster, — F.3d —, 2011 WL 4014343, *14 (7th Cir. Sept. 12, 2011) ("Arnett's pro se status doesn't alleviate his burden on summary judgment."). Furthermore, we denied Spinney's and Migon's motion for summary judgment against Cummings. See Elipas III, 2011 WL 1706059, *14. The plaintiffs have informed the court that they are not going to pursue their remaining claims against Cummings, electing instead to share whatever money they can collect on the judgments already entered. Accordingly, there is not (nor in all likelihood will there be) any liability for Elipas to share with Cummings with respect to Spinney's and Migon's claims. See 740 ILCS 100/2(b) ("The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share.").[2]

If Elipas is liable to Cummings for contribution, then it is with respect to Cummings' liability to King. See Elipas III, 2011 WL 1706059, *14 (entering summary judgment in favor of King and against Cummings with respect to King's initial $100,000 UWT investment, but denying summary judgment as to his second investment). At his deposition, King testified that Elipas

---

[2] Even if the plaintiffs' sharing agreement leaves open the possibility that Cummings could be liable to Spinney and Migon at some future date, our ruling on the merits of Cummings' counterclaim would preclude a finding that Elipas is liable to Cummings for contribution as to that liability. (See infra Part B.)

contacted him about investing in UWT and presented him with a
"booklet" describing the company. (King Dep., attached as Ex. B to
Cummings' Resp., at 5-6, 11.)  The deposition excerpts attached to
Cummings' brief are vague and incomplete, so it is difficult to
determine exactly which documents King received from Elipas.  We
will assume, for purposes of this motion, that King received the
"UWT Business Plan" and UWT's Amended and Restated Operating
Agreement, which were designated exhibits at King's deposition.
(King Dep. at 3; see also id. at 11, 17.)[3]  King knew Elipas, who
is a podiatrist, through their prior participation in an informal
investment group that Elipas had "developed."  (Id. at 5-6
(testifying about an oil and gas enterprise in which King, Elipas,
and others had invested).)  Later, in connection with King's second
UWT investment, Elipas told King to make his check payable to KKJ
Holdings, a company controlled by Jedynak.  (Id. at 25.)  Elipas,
to King's recollection, was vague about why the check was being
made to KKJ, not UWT.  (Id. at 25-26.)  But he "assured" King that
"the monies will be going to your [King's] investment in UWT." (Id.
at 26.)[4]  King gave the check to Elipas, but none of the money that
King and the other plaintiffs paid to KKJ was ever transmitted to

---

[3]  King's discovery responses indicate that Elipas also gave him a
subscription agreement and an investor questionnaire. (See Pl.'s Answers to
Interrogatories, attached as Ex. 3 to Cummings' Resp., at 2.) However, there is
no evidence that those documents were misleading, at least as they applied to
King's initial investment.

[4]  King also received a letter from Howard stating that Jedynak was
authorized to collect funds "on behalf of UWT." Elipas II, 2010 WL 1611024, *2.

- 6 -

UWT. See Elipas I, 2010 WL 1611024, *2. Instead, Jedynak used the money to enrich himself and, in at least one instance, transmitted to Howard funds intended for UWT. Id. King also testified that throughout the life of his investment, Elipas was his primary source for information about UWT. (King Dep. at 36.) Spinney and Migon testified similarly: Elipas solicited their investment and was their main source for information about the company. (Spinney Dep., attached as Ex. C to Cummings' Resp., at 6, 21; Migon Dep., attached as Ex. D to Cummings' Resp., at 5-7.) And Migon, like King, wrote a check payable to KKJ and delivered it to Elipas. (Migon Dep. at 7.)

## DISCUSSION

### A.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for

- 7 -

the nonmoving party.'" <u>Talanda v. KFC Nat'l Mgmt. Co.</u>, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." <u>McGrath v. Gillis</u>, 44 F.3d 567, 569 (7th Cir. 1995).

**B.  The Illinois Contribution Act**

Section 2 of the Illinois Contribution Act provides, in pertinent part:

> Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

> (b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability . . . .

740 ILCS 100/2.  "The purpose of the Contribution Act is to balance the equities between all culpable parties while ensuring that plaintiffs do not receive double recovery." <u>Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.</u>, 522 F.3d 776, 783 (7th Cir. 2008).  Elipas argues that he is entitled to summary judgment because Cummings has yet to pay any judgment or settlement in this

- 8 -

case, much less an amount exceeding his pro rata share of liability. The Illinois Supreme Court has construed the Contribution Act to require a defendant seeking contribution to file a counterclaim or a third-party complaint in the plaintiff's (i.e., the injured party's) suit. See Laue v. Leifheit, 473 N.E.2d 939, 941 (Ill. 1984); see also 740 ILCS 100/5 ("A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action.").[5] As such, the statute contemplates the defendant filing a contribution claim before his liability is even determined, as Cummings did in this case. See Laue, 473 N.E.2d at 942. Conceivably, a party could establish through interrogatories or requests to admit that the party seeking contribution cannot or will not pay more than his pro rata share of the common liability, but Elipas has not cited any evidence that would support such a finding in this case. Elipas is not entitled to summary judgment on this ground.

Elipas also argues that he is entitled to summary judgment because Cummings has not been found "liable in tort." Although Elipas has not cited, nor are we aware of, any Illinois authorities squarely on point, we conclude that a claim for recission under §

---

[5] The Illinois Supreme Court declared the 1995 amendment to Section 5 of the Contribution Act to be unconstitutional. See Harshman v. DePhillips, 844 N.E.2d 941, 942 n.1 (Ill. 2006) (citing Best v. Taylor Machine Works, 689 N.E.2d 1057 (1997)). Therefore, we have cited the version that was in effect prior to the amendment. Id. ("[T]he amended version of section 5 was rendered void ab initio, and the version of the statute in existence prior to its amendment remained in effect.").

- 9 -

13(A) of the Illinois Securities Law is not a tort claim. See Lucas v. Downtown Greenville Investors Ltd. Partnership, 671 N.E.2d 389, 399 (Ill. App. Ct. 1996) ("Unlike their federal counterparts, Illinois courts have not interpreted actions brought under the Act to be based in common-law fraud or tort."). The plaintiffs sought and obtained summary judgment against Cummings only with respect to this claim. However, the Contribution Act only requires that the party seeking contribution, and the party from whom contribution is sought, be "potentially" liable in tort for the same injury. See Joe & Dan Intern. Corp. v. U.S. Fidelity & Guar. Co., 533 N.E.2d 912, 918 (Ill. App. Ct. 1988); see also Sompo, 522 F.3d at 783. "As such, [their liability] is determined at the time of the injury to the plaintiff seeking to hold liable under some theory, not necessarily a tort theory, less than all parties who were potentially liable therefor." Joe & Dan, 533 N.E.2d at 918; see also Doyle v. Rhodes, 461 N.E.2d 382, 388 (Ill. 1984) ("[T]he Contribution Act focuses . . . on the culpability of the parties rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss."). The fact that we have found Cummings liable for a non-tort claim does not foreclose his contribution claim if he can show that he and Elipas are both "potentially" liable in tort for King's injury. See Joe & Dan, 533 N.E.2d at 918 ("[T]hat plaintiff sued USF&G and Pomper under nontort theories was not dispositive of whether both might also be subject to liability in tort to

- 10 -

plaintiff for the same injury for purposes of contribution between them."); _see also_ Sompo, 522 F.3d at 786 ("A party seeking contribution or a right of setoff under the JTCA must show that the plaintiff potentially had a cause of action sounding in tort against both the party seeking contribution and the party from whom contribution is sought.'") (citing North American Van Lines, Inc. v. Pinkerton Sec. Systems, Inc., 89 F.3d 452, 456 (7th Cir. 1996)) (emphasis in original).

Cummings argues that Elipas committed an unspecified "tort" because he lacked authority to solicit investments from the plaintiffs. (Cummings Resp. at 6.) The thrust of Cummings' argument seems to be that he would not have been liable to King but for Elipas' conduct, which is probably true: if King had not learned about UWT from Elipas he probably would not have invested in the company. But that is not enough to make Elipas liable in tort. See Movitz v. First Nat. Bank of Chicago, 148 F.3d 760, 762 (7th Cir. 1998) ("[B]ut-for causation is not enough to establish civil liability for carelessness or other wrongdoing . . . ."). Indeed, Cummings has not cited any legal authorities in his response brief besides the Contribution Act itself. We must liberally construe his filings, but this principle has limits. We are not Cummings' advocate, and it would be unfair to Elipas if we constructed legal arguments and performed legal research for him. See Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001). Nevertheless, we will address the one "potential" tort claim

- 11 -

clearly suggested by the parties' pleadings: negligent misrepresentation. (<u>See</u> Am. Compl. ¶¶ 175-180; <u>see also</u> Elipas Mem. at 4-5.) "The elements of a negligent misrepresentation claim under Illinois law are: (1) a duty on the part of [the defendant] to communicate accurate information; (2) false statements of material fact; (3) carelessness or negligence by [the defendant] in ascertaining the truth of the statements; (4) intention to induce [the plaintiff] to act; (5) action by [the plaintiff] in reliance on the truth of the statements; and (6) damages." <u>F:A J Kikson v. Underwriters Laboratories, Inc.</u>, 492 F.3d 794, 801 (7th Cir. 2007) (citing <u>First Midwest Bank, N.A. v. Stewart Title Guar. Co.</u>, 843 N.E.2d 327, 335 (2006)). Negligent misrepresentation is an exception to the economic loss doctrine, which prohibits a plaintiff from suing in tort to recover purely economic losses. See <u>Moorman Mfg. Co. v. National Tank Co.</u>, 435 N.E.2d 443, 453 (Ill. 1982); <u>see also</u> <u>In re Chicago Flood Litigation</u>, 680 N.E.2d 265, 275 (Ill. 1997).

A person "in the business of supplying information for the guidance of others in their business transactions" has a duty to convey accurate information to his or her clients. <u>See</u> <u>Moorman</u>, 435 N.E.2d at 453; <u>see also</u> <u>First Midwest Bank, N.A. v. Stewart Title Guar. Co.</u>, 843 N.E.2d 327, 335 (Ill. 2006).[6] It is

---

[6] The Restatement (Second) of Torts indicates that a "pecuniary interest" in the transaction in question is sufficient, but it appears that Illinois courts have not adopted that particular formulation. <u>See</u> <u>Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.</u>, 125 F.3d 468, 476-77 (7th Cir. 1997) ("[W]e doubt that the pecuniary interest theory is viable in Illinois because the Illinois

- 12 -

undisputed that Elipas was a podiatrist, not a financial adviser, when he contacted King about investing UWT. (See Elipas Aff., attached as Ex. 1 to Elipas' L.R. 56.1 Stmt., ¶ 2); cf. Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 385 N.E.2d 376, 380 (Ill. App. Ct. 1979) (concluding that a stockbroker has a duty to convey accurate information to his clients). The fact that he passed the "Series 7" examination in July 2006 does not create a genuine dispute of fact with respect to his duty to convey accurate information in January 2005.[7] Even if he had passed the exam before King's investment, there is no evidence that Elipas conducted business as a registered representative. (See Elipas Aff. ¶¶ 2-5 (stating, without contradiction, that he was not acting as an investment adviser and never received anything of value in exchange for recommending UWT).) It appears that Elipas was an amateur investor who passed along bad information to some of his patients and professional acquaintances:

> Cummings: Did Dr. Elipas come to you and express concern at some point down the road with regards to what was going on at UWT?
>
> Spinney: Well, at first he was so gung ho. I mean, you just — so as an investor he's naive. He's a doctor. Yeah, for months and months he was going, Oh, God, going

---

courts have not expressly recognized it."). Cummings has not cited, nor are we aware of, any Illinois case decided after Orix that recognizes the theory.

[7] "The Series 7 Examination is the Qualification Examination for General Securities Registered Representatives. As a qualification examination, it is intended to safeguard the investing public by helping to ensure that registered representatives are competent to perform their jobs." Content Outline for the General Securities Registered Representative Examination (Test Series 7), available at: http://www.finra.org/web/groups/industry/@ip/@comp/@regis/documents/industry/p038201.pdf.

> to make so much money on this.  And I'm going, Joe, just
> work on my foot, will you?

(Spinney Dep. at 42.)  It is true that he accepted checks from some
of these individuals, but we do not think that is sufficient to
create a material dispute of fact about whether he was "in the
business of supplying information for the guidance of others in
their business transactions."

We also conclude that there is insufficient evidence
establishing that Elipas' alleged negligence proximately caused
King's injury.  "The requirement of proving loss causation," as
proximate cause is sometimes called in securities cases, "is a
general requirement of tort law."  Movitz, 148 F.3d at 763; see
also Ray v. Citigroup Global Markets, Inc., 482 F.3d 991, 994-95
(7th Cir. 2007) ("If the plaintiff cannot prove 'loss causation' —
that is, the fact that the defendant's actions had something to do
with the drop in value — then the claim must fail.").  As such, it
applies to tort claims for negligent misrepresentation.  See
Movitz, 148 F.3d at 763 (applying the loss-causation requirement to
a claim for negligent misrepresentation).  Loss causation is often
difficult to prove in securities cases, a fact that may have
motivated plaintiffs to seek summary judgment against Cummings only
with respect to their Illinois Securities Law claims against him.
See Lucas, 671 N.E.2d at 398-400 (holding that the Illinois
Securities Law does not require proof of loss causation).  As we
discussed in Elipas III, the "UWT Business Plan" and UWT's Amended

- 14 -

and Restated Operating Agreement created the misleading impression that (1) UWT did not have any operational history before it was formed in June 2003, and (2) Howard's most recent relevant business experience was a highly successful venture called "Northstar." See Elipas III, 2011 WL 1706059, *5-6. In fact, UWT continued a business that Howard had previously conducted through predecessor companies. Id. at *5. Those companies lost money and left disgruntled investors in their wake. Id. This information would be important to investors considering an investment in UWT, and all the plaintiffs have affirmed that they would not have invested in the company if they had known the truth. But there is no evidentiary basis to conclude that the plaintiffs would not have lost money if UWT had been a true start-up company without any previous operational history. See Ray, 482 F.3d at 995 (affirming summary judgment where the plaintiffs failed to cite any evidence that the defendants' misrepresentations caused the company's share price to drop). UWT did not declare bankruptcy until June 2007, four years after it assumed its predecessors' operations. No doubt Jedynak's and Howard's embezzlement scheme played a role in UWT's demise, but we have held that plaintiffs are not entitled to summary judgment against Cummings insofar as they were victims of that particular scheme. See Elipas III, 2011 WL 1706059, *14; Elipas I, 2010 WL 1286795, *5. In sum, we conclude that Cummings has failed to come forward with evidence that would support a finding that Elipas is liable in tort for plaintiffs' losses.

- 15 -

Accordingly, Elipas is entitled to summary judgment on Cummings'
counterclaim for contribution.

## **CONCLUSION**

Elipas' motion for summary judgment on Cummings' counterclaim
(437) is granted.  A status hearing is scheduled for November 16,
2011 at 10:30 a.m.


DATE:     November 3, 2011


ENTER:    _____

          John F. Grady, United States District Judge